**DOWNTOWN ATHLETIC CLUB, a Utah Corporation, Plaintiff and Appellant,**

v.

**S.M. HORMAN, an individual a/k/a Sid Horman; S.M. Horman & Sons, a partnership; and S.M. Horman & Sons Company, Defendants and Respondents.**

**S.M. HORMAN & SONS COMPANY, Counter-Plaintiff and Respondent,**

v.

**DOWNTOWN ATHLETIC CLUB, a Utah corporation, and David G. Yurth, an individual, Counter-Defendants and Appellant.**

No. 860109–CA.

Court of Appeals of Utah.

July 28, 1987.

L.R. Gardiner, Jr., Thomas R. Vuksinick, Chapman and Cutler, Salt Lake City, for defendants and respondents.

Lorin N. Pace, G. Randall Klimt, William B. Parsons, Salt Lake City, Pace, Klimt, Wunderli & Parsons, for plaintiff and appellant.

Before BILLINGS, GARFF and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Appellant, Downtown Athletic Club ("DAC") appeals from the district court's judgment denying its motion to continue and its motion to compel further discovery, and granting respondents' (jointly referred to as "Horman") motion for summary judgment. DAC contends that the trial court erred in ruling as a matter of law that the conditions precedent to the parties' agreement were not satisfied thus discharging Horman's obligation to perform. We affirm.

DAC executed a written agreement with S.M. Horman on May 8, 1981 entitled "Construction & Lease Agreement for the Downtown Athletic Club" ("Construction & Lease Agreement"). This agreement provided that Horman would construct athletic clubs and then sublease the clubs to DAC. The Construction & Lease Agreement delineated several conditions precedent to Horman's obligation to perform:

1. Horman would construct improvements to the Harver Warehouse Building provided that the Harver Warehouse Building could be reinforced at a price that was acceptable to both Horman and DAC, *and* in a manner that would satisfy the building code requirements of the Salt Lake City Building Department.

2. Horman was to commence construction only after confirmed receipt and acceptance by Horman of construction financing acceptable to Horman, *and* the entire lease was specifically subject to Horman being able to secure sufficient financing at a rate not to exceed 12% per annum and that DAC should pay all annual interest charges in excess of 12% per annum provided Horman did decide to pay a higher interest rate than 12%.

3. DAC had use of office space in the old Kress Building only if it paid the nominal rent of $1.00 per month.

4. Horman was obligated to construct the athletic clubs only if DAC sold a sufficient number of memberships prior to beginning construction of the athletic clubs in order to guarantee that the payments required by the Construction & Lease Agreement would be paid.

5. DAC was to assign dues income of individual membership contracts, by contract number, to a special account designated solely for the payment of monthly lease payments to verify that there were sufficient funds available.

DAC contends that the parties orally modified the Construction & Lease Agreement by including an assignment of part of Horman's leasehold interest in the Harver Warehouse Building to DAC. This oral agreement also contained conditions precedent most of which were identical to those enumerated in the Construction & Lease Agreement:

1. The owners of the Harver Warehouse Building had to completely and absolutely release Horman from all obligations under the lease and accept DAC as the new lessee in place of Horman.

2. Engineering studies had to be completed and approved by Salt Lake City for the renovation of the Harver Building.

3. Adequate financing for the completion of the construction of the athletic club(s) had to be secured.

Horman served notice on DAC to "quit the premises" after it sold some of the subject property to the Salt Lake Acquisition Group. Consequently, DAC filed suit against Horman, seeking specific performance and damages for breach of the written and oral agreements. Horman filed its answer and counterclaim for declaratory judgment, tortious waste, unlawful detainer, and slander of title on January 6, 1984.

Comprehensive discovery ensued with each party producing hundreds of documents. Discovery ended with the depositions of the two principals. David Yurth, president of DAC, was deposed on April 2, 1984 resulting in a 283 page transcript, 36 exhibits, and over 13 pages of corrections. S.M. Horman's deposition was taken April 26, 1984 resulting in a 245 page transcript and several exhibits. No further discovery was conducted by either party.

Horman filed its motion for summary judgment together with supporting affidavits and a memorandum of points and authorities on July 19, 1984, nearly two months after the last deposition was taken and when there were no outstanding discovery requests. Oral argument on the motion was scheduled for August 28, 1984. On August 22, 1984, six days before the motion was to be argued, DAC's counsel moved to withdraw and requested a 60–day extension to respond to Horman's motion. The district court granted both of these requests.

Sixty days elapsed without an appearance from DAC and without response to the motion. Consequently, on October 26, 1984, Horman served written notice on DAC pursuant to Utah Code Ann. § 78–51–36 (1978) requesting that it either appoint counsel or appear in person. On November 2, 1984, Horman renoticed its motion for summary judgment and scheduled the hearing for November 16, 1984. On November 13, 1984, DAC's new counsel entered an appearance and filed a motion for continuance, an "extraordinary request for review," and noticed nine depositions all of which were scheduled *after* the scheduled oral argument on Horman's summary judgment motion.

On November 16, 1984, the district court heard oral argument on DAC's motion to continue and Horman's motion for summary judgment. The district court denied DAC's motion to continue, took Horman's motion for summary judgment under advisement, and gave DAC an additional twenty days to file a written response to Horman's motion for summary judgment. On December 6, 1984, DAC filed a motion to compel discovery seeking to "continue" S.M. Horman's deposition.[1] DAC's motion to compel was supported by an affidavit claiming the need for further discovery. After receiving several continuances, DAC filed its memorandum in opposition to Horman's motion for summary judgment on December 10, 1984 together with eight affidavits, some of which were unsworn and unsigned.

The district court denied DAC's motion to compel further deposing of S.M. Horman and granted Horman's motion for summary judgment holding that the oral agreement was void under the statute of frauds and that Horman was excused from performing under the Construction & Lease Agreement because none of the conditions precedent had been performed. This appeal followed.

Three issues are raised on appeal. First, did the lower court abuse its discretion in denying DAC's motion to continue and its motion to compel further discovery? Second, is the oral modification of the Construction & Lease Agreement void under the statute of frauds and, if not, do the uncontested facts demonstrate that Horman was excused from performing under the terms of the modification? Third, did the lower court err in granting Horman's motion for summary judgment ruling that Horman was excused from performing under the Construction & Lease Agreement

---

1. Horman's counsel refused to allow S.M. Horman, an 80 year-old man who already had been subjected to extensive cross-examination during the initial deposition, to undergo yet further deposing until the trial court had ruled on its summary judgment motion.

as DAC failed to satisfy the requisite conditions precedent?

We will review the facts and inferences in the light most favorable to DAC, the party against whom the judgment was granted. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

## I.

■ The first issue we must address is whether the trial court erred in denying DAC the opportunity to conduct further discovery prior to the entry of summary judgment. Generally, summary judgment should not be granted if discovery is incomplete since information sought in discovery may create genuine issues of material fact sufficient to defeat the motion. *Auerbach's Inc. v. Kimball*, 572 P.2d 376, 377 (Utah 1977). However, a court should deny a motion to continue if the motion opposing summary judgment is dilatory or without merit. *See id.*

Rule 56(f) of the Utah Rules of Civil Procedure provides that a party opposing summary judgment may submit an affidavit stating the reasons why he is presently unable to present evidentiary affidavits essential to support his opposition to summary judgment. If the court finds the reasons to be adequate, the court may, among other things, order that further discovery be conducted and continue the summary judgment motion. The Utah Supreme Court, in *Cox v. Winters*, 678 P.2d 311, 313–14 (Utah 1984), delineated several factors to consider under Rule 56(f):

1. Were the reasons articulated in the Rule 56(f) affidavit "adequate" or is the party against whom summary judgment is sought merely on a "fishing expedition" for purely speculative facts after substantial discovery has been conducted without producing any significant evidence?
2. Was there sufficient time since the inception of the lawsuit for the party against whom summary judgment is sought to use discovery procedures, and thereby cross-examine the moving party?
3. If discovery procedures were timely initiated, was the non-moving party afforded an appropriate response?

Applying the foregoing legal principles, we find that the district court properly denied DAC's motion to compel further deposing of S.M. Horman and its motion to continue the summary judgment hearing. Both parties conducted extensive discovery. Hundreds of documents were produced. Lengthy depositions were taken. The record reveals that DAC failed to conduct further discovery although it had ample time and opportunity to do so. Discovery essentially ended on April 26, 1984. Three months elapsed before Horman filed its motion for summary judgment. During this three-month period DAC conducted no further discovery. DAC was given six weeks before oral argument on the motion for summary judgment in which to conduct any necessary discovery. Again, DAC sought no further discovery. DAC was also granted an additional 60–day extension specifically to respond to Horman's motion when DAC's original counsel withdrew five days before oral argument was scheduled. These additional 60 days lapsed without DAC entering an appearance or seeking any additional discovery.

On November 2, 1984, nearly four months after Horman filed its initial motion for summary judgment, and with no action by DAC to respond to the motion, Horman again noticed its motion for summary judgment and scheduled oral argument for November 16, 1984 providing DAC yet another two weeks to respond to its motion. Three days prior to the scheduled oral argument, DAC's new counsel appeared and finally sought additional discovery by noticing nine depositions (scheduled *after* oral argument on the motion for summary judgment).

■ On December 6, 1984, DAC moved to compel the appearance of S.M. Horman to continue his deposition. DAC's motion to compel discovery was accompanied by an affidavit by its counsel claiming the need for further discovery.[2] This affi-

---

2. DAC did not identify its affidavit as a Rule 56(f) affidavit. However, the substance of the

davit, however, is deficient as a Rule 56(f) affidavit. It fails to articulate any material area of inquiry not covered by the original deposition of S.M. Horman. Rather, DAC's counsel merely states:

> Having read the Horman deposition there are a number of areas into which Mr. Zoll [DAC's original counsel] did not inquire and disposition of this case in a prompt and reasonable manner depends upon prompt access to the information and alleged testimony which will be given by Mr. Horman.

> . . . . .

> There are a number of issues into which the Plaintiff's counsel Mr. Zoll did not inquire and notice was given at the end of the day that the deposition was being continued.

We believe that DAC's counsel was simply on a "fishing expedition" for purely speculative facts after substantial discovery had been conducted without producing any significant evidence. *Cox v. Winters,* 678 P.2d at 312–313, 314. Moreover, DAC had sufficient time and opportunity before the summary judgment motion was argued to conduct discovery and in fact did so.

We also are of the opinion that DAC had ample opportunity to cross-examine S.M. Horman during his initial deposition. The deposition took an entire day. At the initial deposition, DAC's original counsel requested that S.M. Horman and his counsel be available for two full days. Schedules were rearranged to meet this request. The deposition was stopped abruptly at 4:45 p.m. on the first day. Horman was prepared to proceed further that day and the next as scheduled by DAC's counsel. DAC's counsel, however, chose not to proceed.

By way of summary, the record indicates that DAC had over a year to conduct discovery and had been given several continuances and extensions by the trial judge. DAC did not articulate any specific

factual area which needed further probing. Under the totality of the circumstances, the trial court reasonably concluded that no further factual development was necessary and properly denied DAC's motion to compel and its motion to continue.

## II.

Next, we must determine if the trial court correctly found that the alleged oral modification of the Construction & Lease Agreement did not preclude Horman's motion for summary judgment.

DAC contends that the parties orally modified the written contract, a contention which Horman disputes, by including an assignment by Horman of part of its leasehold interest in the Harver Warehouse Building to DAC. Both parties agree that Horman contemplated assigning its interest in the masterlease only if Horman was completely released by the owners of the Harver Warehouse Building from all obligations under the lease. The alleged oral modification also contained two other conditions precedent which were identical to those identified in the Construction & Lease Agreement. First, DAC was required to secure "adequate" construction and long-term financing, and second, DAC was to provide acceptable engineering reports to Salt Lake City to obtain the appropriate building permit to reinforce and reconstruct the Harver Warehouse Building.

DAC concedes that when the statute of frauds requires a contract to be in writing, Utah Code Ann. § 25–5–3 (1984), any alteration or modification must also be in writing. *Zion's Properties, Inc. v. Holt,* 538 P.2d 1319, 1322 (Utah 1975). DAC, however, argues that the oral modification of the Construction & Lease Agreement was removed from the bar of the statute of frauds under the doctrine of partial performance. Utah Code Ann. § 25–5–8 (1984).

DAC alleges that it partly performed the oral modification by attempting to secure the specified construction and

affidavit suggests it was intended to be such. We are controlled by substance, not captions. *Armstrong Rubber Co. v. Bastian,* 657 P.2d 1346, 1348 (Utah 1983). Therefore, we will treat DAC's affidavit as a Rule 56(f) affidavit.

long-term financing, by selling memberships to the clubs, and by retaining firms to perform the engineering studies. All of the acts alleged, including the engineering studies and the financing, were not exclusively referable to the oral modification but were also required under the original Construction & Lease Agreement and thus would not remove the oral modification from the statute of frauds. *See McDonald v. Barton Bros. Inv. Corp.*, 631 P.2d 851, 853 (Utah 1981). More importantly, however, even if the oral modification was enforceable, DAC's position still fails. As more fully developed in section III of this opinion, the conditions precedent to the oral modification were not satisfied and thus Horman's obligation to perform under the oral modification never arose.

### III.

The third issue on appeal is whether the trial court erred in concluding as a matter of law that none of the conditions precedent to the written contract were satisfied thus excusing Horman's obligation to perform.

 It is undisputed that *all* the conditions precedent to the Construction & Lease Agreement had to be satisfied before Horman became obligated to construct and ultimately lease the athletic clubs to DAC. If one condition was not satisfied, Horman was excused from performing.[3] A review of the record discloses that DAC failed to satisfy several of the conditions precedent to the written agreement.

As previously discussed, Horman was to make improvements provided that the Harver Warehouse Building could be reinforced at a price that was acceptable to both parties, *and* in a manner that would satisfy the requirements of the Salt Lake City Building Department. This provision really contains two conditions precedent involving engineering studies. Engineering studies had to be completed before the cost

of reinforcement could be determined and before the Building Department could consider whether to issue the appropriate permit.

The undisputed facts in the record indicate that although DAC attempted to have engineering studies performed on the Harver Warehouse Building, no final engineering study was in fact completed much less submitted to the City for approval.

DAC originally retained Bonneville Engineering to conduct the engineering studies. DAC later retained Scott Evans, managing partner of Cornwall Evans & Fife, architects. Evans in turn hired Ronald Weber of Weber & Associates to conduct the requisite engineering studies and determine costs. Scott Evans, in a sworn affidavit, claims that he hired a structural engineer to "suggest appropriate engineering upgrades or structural reinforcements" as required by the City. Scott Evans, however, merely states that the "results" of the engineering study and recommendations for structural reinforcement and preliminary drawings were presented to Roger Evans, assistant director of the Department of Building & Housing Services for Salt Lake City Corporation. Scott Evans admits that Roger Evans, in a meeting, required final working drawings of the suggested engineering solutions. Conspicuously absent from Scott Evans' affidavit is his sworn statement that he did in fact submit the final engineering drawings and seismic analysis to the City and that they were approved.

 Roger Evans, the assistant director of the Department of Building & Housing Services for Salt Lake City Corporation, in his affidavit, states that DAC *never* submitted any plans, specifications, engineering reports or the requested seismic analysis to the Department. In light of Roger Evans' and Scott Evans' affidavits, it is uncontroverted that the requisite engineer-

---

**3.** The Construction & Lease Agreement did not contain an express "time is of the essence" provision. Therefore, DAC had a reasonable time under the circumstances in which to satisfy the conditions precedent. *Bradford v. Alvey & Sons*, 621 P.2d 1240, 1242 (Utah 1980). The agreement was executed on May 8, 1981. DAC filed its complaint on September 9, 1983. Therefore, DAC had over two years to satisfy the conditions. Neither party questioned whether this was a sufficient amount of time for DAC to perform.

ing studies were never submitted to the City. Consequently, the cost of reinforcement of the Harver Warehouse Building could not be determined and the City could not approve such reinforcement. Therefore, we affirm the trial court's conclusion that this condition precedent was not satisfied and Horman's obligation to perform under either the original Construction & Lease Agreement or the alleged oral modification was excused.

Having found that this one condition precedent has not been performed, we decline to address whether DAC satisfied any other conditions because, as previously discussed, *all* the conditions precedent had to be satisfied before Horman's performance was required.

Affirmed. Costs to Horman.

JACKSON and GARFF, JJ., concur.