**SANDY CITY, a municipal corporation, Plaintiff·and Appellant,**

v.

**SALT LAKE COUNTY, a political subdivision of the State of Utah; Salt Lake County Planning Commission; K. Delyn Yeates; R. Scott Priest; W. Scott Kjar; Steven E. Smoot; Postero–Blecker, Inc.; and Chevron U.S.A., Inc., Defendants and Appellees.**

No. 880429–CA.

Court of Appeals of Utah.

June 7, 1990.

Walter R. Miller, Sandy, for plaintiff and appellant.

Brinton R. Burbidge, Kirton, McConkie & Bushnell, Salt Lake City, for defendants and appellees Yeates, Priest, Kjar, Smoot and Postero–Blecker, Inc.

Leonard J. Lewis, Salt Lake City, for defendant and appellee Chevron U.S.A., Inc.

Kent S. Lewis, Salt Lake City, for defendant and appellee Salt Lake County.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Plaintiff Sandy City appeals the trial court's dismissal of its action against defendants Salt Lake County, property owners Yeates, Priest, Kjar, and Smoot, and developers Postero–Blecker, Inc. (Postero–Blecker) and Chevron USA, Inc. (Chevron). We affirm the trial court's dismissal of Sandy City's action.

This action involves a 4.18–acre parcel of commercial property located on the northwest corner of 10600 South and 1300 East in unincorporated Salt Lake County. The property abuts Sandy City's boundaries and is located within an unincorporated "island" within Sandy City's limits. Since 1976, the county master plan and Sandy City plans have called for rural residential uses of the property.

In 1979, Sandy City adopted a general annexation policy declaration which, among other things, delineated twenty-one unincorporated islands within the city boundaries which Sandy City was willing to annex, including the present parcel. According to Sandy City, this policy declaration requires property owners to first attempt to annex to Sandy City, thereby obviating the County's approval for development of commercial property when the development cost is in excess of $750,000.

On August 5, 1987, at the property owners' request, the Salt Lake County Commission, without amending its master plan, adopted a zoning ordinance which permitted commercial development on the present property. Sandy City objected to the rezoning but failed to appeal the decision.[1]

On August 26, 1987, Postero–Blecker, the agent for the property owners and Chevron, applied to Salt Lake County for a conditional use permit to build a Chevron service station, car wash, and mini-convenience store on .7 acres of the property. This application indicated that the estimated value of the project was $250,000. The property owners also intended to build a McDonald's restaurant on the property. On September 30, 1987, they filed another conditional use permit application which valued the McDonald's project at approximately $300,000. The property owners did not petition to annex the property to Sandy City.

On September 18, 1987, Sandy City protested the Chevron application, indicating that "Sandy City is currently considering annexation of the property and the annexation will require an independent consideration of proper zoning for this property." It also unsuccessfully petitioned the Salt Lake County Commission to reconsider and amend its previously passed zoning ordinance.

On October 13, 1987, the Salt Lake County Planning Commission approved the Chevron conditional use application. On October 14, 1987, Sandy City appealed this decision. The Salt Lake County Planning Commission, following several public hearings, denied Sandy City's appeal and entered findings of fact.

Sandy City then appealed the conditional use decision to the Salt Lake County Commission, which held a hearing on December 9, 1987. The Salt Lake County Commission affirmed the Salt Lake County Planning Commission's grant of the Chevron conditional use permit, finding that the required statutory procedure had been followed and that the grant of the conditional use permit was in the community's interest. Sandy City then brought this action in the district court.

On January 18, 1988, Salt Lake County filed with the district court the affidavit of Helen Christiansen, the Salt Lake Planning Commission's administrative assistant, and the minutes of the Salt Lake County Planning Commission's September 22 and October 13, 1987 meetings, at which Chevron's conditional use permit application had been discussed and interested parties had presented evidence. Subsequently, Sandy City submitted an affidavit indicating that the projected cost of the Chevron development was between $660,000 to $760,000, and that the cost of the McDonald's development would be between $900,000 and $1,100,000. Simultaneously, Salt Lake County submitted the minutes of the April 28, 1987 meeting of the Salt Lake County Planning Commission, which involved discussion of the zoning change, along with Helen Christiansen's authenticating affidavit. All parties moved for summary judgment.

Sandy City then moved to strike Salt Lake County's affidavits, alleging that they failed to conform to the requirements of rule 56(e) of the Utah Rules of Civil Procedure. Chevron responded by filing an affidavit indicating that the building value of the proposed Chevron station was $175,000.

While these regulations are not a part of this record, there is no dispute that Sandy City failed to appeal the rezoning pursuant to these regulations.

On February 4, 1988, the day before the hearing on Salt Lake County's motion for summary judgment, Sandy City's attorney moved for additional discovery time pursuant to rule 56(f) of the Utah Rules of Civil Procedure.

During the hearing on February 5, 1988, Salt Lake County requested permission to introduce into evidence the certified record of the administrative hearings. These records included the previously submitted commission minutes, with additional maps and supporting materials. Sandy City's counsel objected, stating that he did not know what the administrative record contained and, thus, the record was prejudicial. The district court overruled Sandy City's objection and allowed the record to be entered into evidence. On February 19, 1988, Salt Lake County submitted the minutes of the December 9, 1987 meeting of the Salt Lake County Commission, containing the appeal of the conditional use permit grant, along with the administrative assistant's supporting affidavit.

Salt Lake County filed the complete certified administrative record with the district court on March 3, 1988. On March 15, 1988, the district court entered its decision, finding that the Salt Lake County Planning Commission had properly issued the conditional use permit, and that defendants' actions did not violate the annexation statute, Utah Code Ann. § 10–2–418 (1986). It granted summary judgment in favor of defendants and dismissed Sandy City's action. Subsequently, Sandy City unsuccessfully moved for an injunction on the development of the property during the pendency of the appeal. It then brought this appeal.

On appeal, Sandy City challenges the summary judgment, first arguing that there were substantial issues of material fact making summary judgment improper because: (1) Salt Lake County untimely submitted the administrative record in violation of rule 6(d) of the Utah Rules of Civil Procedure; (2) Salt Lake County's administrative record and affidavits were untimely filed in violation of rule 56 of the Utah Rules of Civil Procedure; (3) the affidavits and other evidence presented by Chevron violated rule 56(e) of the Utah Rules of Civil Procedure by lacking an adequate evidentiary foundation; (4) the trial court erred in refusing to grant Sandy City's rule 56(f) motion for further discovery; and (5) there were substantial issues of material fact in the record. Sandy City's second major assignment of error is that the trial court erroneously interpreted Utah Code Ann. §§ 10–2–418 and 10–1–104(11) (1986) by ruling that (1) to preclude urban development of the property at issue, Sandy City had to formally declare its intention to annex it prior to the occurrence of the events leading to this lawsuit, and (2) the Chevron development, and possibly the McDonald's development, did not constitute "urban development" under section 10–1–104(11).

## I. FACTUAL AND EVIDENTIARY ISSUES

Before we address Sandy City's contentions, however, it is necessary to examine the scope of our review in cases dealing with summary judgment and municipal zoning issues.[2]

■ In reviewing a summary judgment, an appellate court "consider[s] the evidence in the light most favorable to the losing party, and affirm[s] only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law." *Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah Ct.App. 1987).

■ It is well established in Utah that "courts of law cannot substitute their judgment in the area of zoning regulations for that of the [municipality's] governing body." *Naylor v. Salt Lake City Corp.*, 16 Utah 2d 192, 398 P.2d 27, 29 (1965) (footnote omitted). Instead, the courts afford a comparatively wide latitude of dis-

---

2. Sandy City relies upon annexation statutes and characterizes some of the issues as annexation-related, however this appeal is from the grant of a conditional use permit, a zoning function.

cretion to administrative bodies charged with the responsibility of zoning, as well as endowing their actions with a presumption of correctness and validity, because of the complexity of factors involved in the matter of zoning and the specialized knowledge of the administrative body. *Cottonwood Heights Citizen Ass'n v. Board of Comm'rs*, 593 P.2d 138, 140 (Utah 1979). Thus, the courts will not consider the wisdom, necessity, or advisability or otherwise interfere with a zoning determination unless "it is shown that there is no reasonable basis to justify the action taken." *Id.*

In a zoning action, Utah Code Ann. § 10–9–15 (1986) indicates that an aggrieved party may "maintain a plenary action for relief" from any decision of the municipal body within thirty days of the filing of the decision. The Utah Supreme Court stated that "[t]he statutory language 'plenary action *for relief therefrom* ' presupposes the continued existence of the administrative action, thus suggesting an appeal rather than a trial de novo." *Xanthos v. Board of Adjustment*, 685 P.2d 1032, 1034 (Utah 1984). However, "[t]he nature and extent of the review depends on what happened below as reflected by a true record of the proceedings, viewed in the light of accepted due process requirements." *Denver & Rio Grande W. R.R. Co. v. Central Weber Sewer Improvement Dist.*, 4 Utah 2d 105, 287 P.2d 884, 887 (1955). The supreme court also found, in *Xanthos,* that where a hearing has proceeded in accordance with due process requirements, the reviewing court can look only to the record, which consists of the hearing minutes along with the formal findings and order. *Xanthos,* 685 P.2d at 1034. However, where no record is preserved, and there is, consequently, nothing to review, the reviewing court may take evidence. *Id.* While this evidence is not necessarily limited to the evidence presented below, the reviewing court may not retry the case on the merits or substitute its judgment for that of the municipal body. *Id.*

Because an administrative record has been preserved in the present circumstance, we find that this matter should be reviewed on the record, and that a de novo trial is inappropriate.

Under these standards of review, we now examine Sandy City's claims that the trial court improperly granted summary judgment on evidentiary issues.

### A. Admission of Administrative Record

First, Sandy City alleges that Salt Lake County untimely submitted the administrative record in violation of rule 6(d) of the Utah Rules of Civil Procedure. It argues that rule 6(d) requires supporting affidavits to be submitted at the time a party files a motion for summary judgment, and that the administrative record is analogous to a supporting affidavit. Because the County submitted the administrative record during the hearing on the motion for summary judgment, rather than beforehand, and, consequently, failed to give Sandy City notice of the contents of the record, Sandy City concludes that the trial court should not have considered the evidence contained in this record in arriving at its summary judgment. On the other hand, the County argues that the Rules of Civil Procedure do not set forth any specific procedure for certifying an administrative record from a county commission to the district court, so rule 6(d) is inapplicable here because it deals only with the filing of affidavits.

In relevant part, rule 6(d) states:

When a motion is supported by an affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time.

Prior to the hearing before the district court on February 5, 1988, the County submitted the minutes of the Salt Lake County Planning Commission hearings held on April 28, May 12, September 22, October 13, and October 27, 1987, along with authenticating affidavits. These minutes contained testimony on all of the disputed issues. The record which the County moved to be placed into evidence during the district court hearing contained these minutes,

accompanied by some documentation and a large quantity of plat maps, but did not add materially to the relevant information already before the court. The court admitted this record into evidence over the strenuous objections of Sandy City, stating that "everything down there is not essential to a determination of these motions. And I think that quite apart from this, [even] if the court disregarded this, it will have before it sufficient undisputed facts of law to make decisions in the matter." Subsequently, the court admitted into evidence, as part of the record, the minutes of the Salt Lake County Commission hearing held on December 9, 1987, which had not previously been available, and various documents that were specifically requested by Sandy City's attorney.

Our review of the record, including the administrative record submitted to the court, indicates that if there was any error in admitting the administrative record, it was harmless because it was essentially cumulative with respect to the evidence already before the court. Further, some of the subsequently admitted evidence was admitted at Sandy City's request.

■ However, we find that the trial court did not err in admitting the administrative record at the time of trial. If we follow rule 6(d) literally, styling the administrative record as the equivalent of an affidavit in support of a motion for summary judgment, the documents must be served not later than one day before the hearing unless the court permits them to be served at some other time. The court, therefore, has discretion to admit such documents at other times, including during the hearing. In this case, the court admitted documents during and after the hearing, in response to requests made by both parties.

However, there are limitations to this discretion. Although the Utah Supreme Court has found that the notice provisions of rule 6(d) are not hard and fast, it has stated that a trial court may dispense with technical compliance to them only if there is satisfactory proof that a party had "actual notice and time to prepare to meet the questions raised by the motion of an adver-

sary." *Jensen v. Eames*, 30 Utah 2d 423, 519 P.2d 236, 238 (1974) (footnote omitted); *see also Western States Thrift & Loan Co. v. Blomquist*, 29 Utah 2d 58, 504 P.2d 1019, 1021 (1972); *Bairas v. Johnson*, 13 Utah 2d 269, 373 P.2d 375, 378–79 (1962).

Although Sandy City objected to the admission of the administrative record on the ground that it did not know what it contained and, therefore, was unprepared to argue against it, the trial court properly denied this objection because the entire record was a matter of public record, had been on file for a substantial period of time prior to the hearing, and both parties had access to it. Further, significant portions of the record, in the form of the commission minutes, were already before the court and Sandy City had ample opportunity to become familiar with them. We find no abuse of discretion in the court's ruling.

### B. Adequate Evidentiary Foundation

Sandy City's next claim of error is that the affidavits and other evidence presented by Chevron and the other defendants violate rule 56 of the Utah Rules of Civil Procedure because they lacked an adequate evidentiary foundation.

■ The relevant portion of rule 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Inadmissible evidence cannot be considered in ruling on a motion for summary judgment, *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989); *Creekview Apartments v. State Farm Ins. Co.*, 771 P.2d 693, 695 (Utah Ct.App.1989); so an affidavit which does not meet the requirements of rule 56(e) is subject to a motion to strike. *Howick v. Bank of Salt Lake*, 28 Utah 2d 64, 498 P.2d 352, 353–54 (1972); *see also Blomquist*, 504 P.2d at 1020–21 (an affidavit containing statements made only "on information and belief" is insufficient and will be disregarded).

Sandy City moved to strike defendants' affidavits for their failure to conform to these requirements. In its motion to strike, Sandy City attacked defendant Chevron's memorandum in support of its motion for summary judgment and the affidavit of Helen J. Christiansen, along with its attached exhibits, to the extent that they were used to establish the allegations set forth in Chevron's memorandum.

■ Helen J. Christiansen's affidavits served to establish that she was the custodian of the record before the Salt Lake County Planning Commission and that, on the basis of her personal knowledge, the hearing minutes and a copy of McDonald's Corporation's application for a conditional use permit were the correct records of the Salt Lake County Planning Commission. Under rules 902(4) and 1005 of the Utah Rules of Evidence, public records are admissible as an exception to the general rule excluding hearsay evidence if they are "certified as correct by the custodian." Utah R.Evid. 902(4). Therefore, Ms. Christiansen's affidavit conformed to rule 56(e) with regard to the admission of the exhibits as portions of the administrative record before the Salt Lake County Planning Commission. As such, they are admissible evidence and are not subject to a motion to strike.

Sandy City challenges various statements made in these minutes as being without evidentiary foundation. These allegations, however, go to the merits of granting the conditional use permit and not to any procedural defects. Therefore, we are not concerned with them under our standard of review. Consequently, we find Sandy City's objections to the foundation of statements made in the record to be without merit.

### C. Further Discovery

■ Sandy City argues that the district court erred in refusing to permit it to conduct further discovery pursuant to rule 56(f) of the Utah Rules of Civil Procedure. Rule 56(f) provides that a court may continue a motion for summary judgment to permit the moving party to obtain affidavits or take depositions. *Hunt v. Hurst,* 785 P.2d 414, 416 (Utah 1990). Rule 56(f) reads as follows:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

It is generally held that rule 56(f) motions should be granted liberally to provide adequate opportunity for discovery, *Cox v. Winters,* 678 P.2d 311, 313 (Utah 1984), *Callioux v. Progressive Ins. Co.,* 745 P.2d 838, 841 (Utah Ct.App.1987) because information gained during discovery may create genuine issues of fact sufficient to defeat a motion for summary judgment. *Downtown Athletic Club v. Horman,* 740 P.2d 275, 278 (Utah Ct.App.1987). However, courts are unwilling to "spare the litigants from their own lack of diligence," *Callioux,* 745 P.2d at 841 (quoting *Hebert v. Wicklund,* 744 F.2d 218, 222 (1st Cir.1984)), so do not grant rule 56(f) motions when dilatory or lacking in merit. *Reeves v. Geigy Pharmaceutical, Inc.,* 764 P.2d 636, 639 (Utah Ct.App.1988); *Downtown Athletic Club,* 740 P.2d at 278–79.

■ A rule 56(f) movant must file an affidavit to preserve his or her contention that summary judgment should be delayed pending further discovery. *Callioux,* 745 P.2d at 841. In this affidavit, the movant must explain how the requested continuance will aid his or her opposition to summary judgment. *Id.* The trial court has discretion to determine whether the reasons stated in a rule 56(f) affidavit are adequate. *Reeves,* 764 P.2d at 639.

■ Sandy City filed an affidavit with the court along with its rule 56(f) motion, stating that it had been unable to take defendants' depositions or to obtain a certified copy of certain county commission minutes. It indicated that it wanted to pursue additional discovery which would show that: (1) the proposed use of the

property contradicted the county master plan and that insufficient evidence had been presented to the County Planning Commission to demonstrate conformity with the plan; (2) the proposed zoning would not contribute to the general well-being of the neighborhood; (3) the proposed use would be detrimental to the health, safety, and general welfare of persons residing in the vicinity; (4) the true scope, costs, and impact of the development was not accurately and fully communicated to the county officials during the decision-making process; and (5) the costs of the development would substantially exceed $750,000.

To determine whether this affidavit was sufficient to merit a rule 56(f) continuance, several factors must have been considered:

(1) Were the reasons articulated in the Rule 56(f) affidavit "adequate" or is the party against whom summary judgment is sought merely on a "fishing expedition" for purely speculative facts after substantial discovery has been conducted without producing any significant evidence? (2) Was there sufficient time since the inception of the lawsuit for the party against whom the summary judgment is sought to use discovery procedures, and thereby cross-examine the moving party? (3) If discovery procedures were timely initiated, was the non-moving party afforded an appropriate response?

*Callioux*, 745 P.2d at 841; *see also Reeves*, 764 P.2d at 639; *Downtown Athletic Club*, 740 P.2d at 278.

In determining if Sandy City's request for further discovery was meritorious, we first consider the relevant standard of review. As we noted above, in municipal zoning decisions, the courts do not consider the wisdom, necessity, or advisability of particular actions. *See Sandy City v. City of South Jordan*, 652 P.2d 1316, 1318–19 (Utah 1982). Instead, the reviewing court may consider whether the municipality acted in conformance with its enabling statutes and ordinances pursuant to its comprehensive plan. *Naylor v. Salt Lake City Corp.*, 16 Utah 2d 192, 398 P.2d 27, 28–29 (1965). The court may not substitute its judgment for that of the municipality on the merits of these issues, however. *Id.* at 129.

The trial record contained evidence as to Salt Lake County's enabling statutes, ordinances, and plans. It also indicated that the Salt Lake County Commission considered evidence with respect to all the issues on which Sandy City wished to perform additional discovery. The Salt Lake County Commission made findings of fact going to the merits of these issues.[3] Discovery relating to the merits of the issues was improper under the standard of review, but could properly be held with respect to enabling statutes and procedural issues. However, there was already substantial evidence on the record regarding the relevant enabling statutes and plans. Further, Sandy City did not allege in its affidavit that it needed additional time to discover procedural errors committed by

---

3. The Salt Lake County Commission findings state, in part:

1. The estimated cost of the development is approximately $175,000....

2. This development is consistent with the intent of the Salt Lake County Master Plan by placing commercial development at major intersections within the county. The Little Cottonwood District Plan was generally intended to be applicable through 1985 and the map is now outdated in this immediate area. Since the adoption of the plan in 1976, Sandy City rezoned the northeast corner of 10600 South 1300 East to commercial, which changed the character of the intersection. Additional commercial development is now appropriate at this intersection and is consistent with the existing development approved by Sandy City.

3. The development will provide additional gasoline services which are needed and desirable in the neighborhood and community....

4. The development is buffered from adjacent residential uses by property zoned R–M and will not be detrimental to the health, safety or general welfare of persons residing or working in the vicinity or injurious to property or improvements in the vicinity. The traffic engineer has reviewed and approved the application. Upon compliance with the conditions required by the Planning Commission, the development will be an attractive addition to the community.

5. The proposed use will comply with the regulation and conditions of the Zoning Ordinance.

Salt Lake County in granting the conditional building permit. Therefore, we find that the trial court could reasonably conclude that the reasons Sandy City articulated in its affidavit would produce only cumulative evidence and, so, were inadequate to merit a continuance under rule 56(f).

Further, Sandy City had sufficient time and opportunity during the pendency of the action before the county commissions to develop and present evidence in its favor and to determine and refute the defendants' evidence. The record indicates that on August 5, 1987, the Salt Lake County Commission adopted the zoning ordinance allowing commercial development on the property at issue, following hearings on the issue held in April and May of 1987. Sandy City objected to the rezoning at this time but failed to appeal. On August 26, 1987, Postero–Blecker applied for the Chevron conditional use permit. Sandy City protested the application on September 18, 1987, and subsequently was involved in several public hearings on the issue before both the Salt Lake County Planning Commission and the Salt Lake County Commission, at which it had ample opportunity to present evidence. Sandy City appealed to the district court in December 1987. The hearing on the summary judgment motion was finally held on February 5, 1988, nearly a year after the initial zoning hearings had taken place. As stated previously, the court will not use a rule 56(f) motion to shield the movant from his or her lack of diligence.

> Finally, in a rule 56(f) motion,
> [t]he mere averment of exclusive knowledge or control of the facts by the moving party is not adequate: the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures.

*Callioux*, 745 P.2d at 840–41 (quoting 2 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice par. 56.24 (2nd ed. 1987)).

Sandy City's affidavit did not comply with these requirements. Therefore, we conclude that the district court did not abuse its discretion in denying Sandy City's rule 56(f) motion.

### D. Genuine Issues of Material Fact

Sandy City argues that the court failed to consider evidence which created the following genuine issues of material fact: (1) Sandy City's willingness to annex, as shown by its express declaration in its annexation policy declaration and its attorney's statements before the Salt Lake County Planning Commission; (2) that the projected cost of the Chevron project exceeded $750,000, as shown by a certified appraisal setting the cost as between $660,-000 and $760,000; (3) that the Chevron station was only part of a larger scheme to develop the 4.18–acre parcel, in that the Chevron station would take only $\frac{1}{6}$ of the parcel, the property owners' represented that the property would be a "commercial subdivision," and that they would be the sole developers of the entire tract; (4) that the cost for the entire development, excluding the cost of the land, would exceed $750,000; and (5) the development was not in compliance with the county master plan and county ordinances which called for rural use of the subject property, and would create traffic hazards and planning problems.

Many of these issues are actually issues of law. The only issues of fact are the projected cost of the project and whether the proposed development was in compliance with the county master plan and county ordinances. As we have noted above, these issues were discussed and evidence was presented before the county commissions, which entered written findings and decided them on their merits. Because their findings were supported by evidence, we do not disturb them on review. *See USX Corp. v. Industrial Comm'n*, 781 P.2d 883, 885–86 (Utah Ct.App.1989) (administrative agency's factual findings will not be disturbed unless they are "arbitrary and capricious").

## II. LEGAL ISSUES

We next address Sandy City's contention that the trial court erred in its interpretation and application of Utah Code Ann. § 10–2–418 (1986) and § 10–1–104(11) (1986). Because summary judgment is granted as a matter of law rather than fact, the appellate court is free to reappraise the trial court's legal conclusions. *Bonham v. Morgan,* 788 P.2d 497, 498 (Utah 1989) (per curiam); *Parents Against Drunk Drivers v. Graystone Pines Homeowner's Ass'n,* 789 P.2d 52, 54 (Utah Ct. App.1990); *Western Fiberglass, Inc. v. Kirton, McConkie & Bushnell,* 789 P.2d 34, 35 (Utah Ct.App.1990).

### A. Annexation Procedure

Utah Code Ann. § 10–2–418 prohibits urban development "within one-half mile of a municipality in the unincorporated territory which the municipality has proposed for municipal expansion in its policy declaration, *if a municipality is willing to annex the territory proposed* for such development under the standards and requirements set forth in this chapter." (Emphasis added.) The parties disagree as to whether Sandy City, to prevent urban development in the disputed territory, was required under this statute to formally declare its intention to annex the territory prior to the events leading to this lawsuit.

Utah Code Ann. § 10–2–414 (1986) requires a municipality, prior to annexing unincorporated territory of more than five acres, to adopt a policy declaration indicating the standard under which it is willing to annex the territory. Sandy City argues that it expressly declared its willingness to annex the property before initiation of the present lawsuit by (1) promulgating a general policy declaration indicating its willingness to annex the property, if petitioned, along with twenty other parcels; and (2) its counsel's direct statement to the Salt Lake County Planning Commission that it was willing to annex the property. The trial court found that Sandy City was obliged to

make a formal declaration of intent to annex, in addition to its general policy declaration, to invoke the protection of section 10–2–414.

▮▮▮ Even though Sandy City, in its master policy declaration, had indicated its interest in annexing the property should the property owners so petition, the property owners never petitioned, nor did Sandy City attempt to annex the property on its own. Further, it did not appeal the county's initial zoning decision pursuant to Utah Code Ann. § 10–9–9 (1986), and raise this issue at that time. Instead, it waited to raise the issue on the subsequent grant of the conditional use permit, where the relevant issues do not include the proposed use of the land or any annexation issue, but only whether the proposed use comports with the previously enacted zoning regulations and county master plan. Because Sandy City could and should have raised this issue earlier, we find that it is precluded from raising it now. *See Ringwood v. Foreign Auto Works,* 786 P.2d 1350, 1357 (Utah Ct.App.1990). As such, we do not address the issue of whether Sandy City was required under section 10–2–418, in addition to its master policy declaration, to officially declare its willingness to annex a territory of less than five acres.[4] Consequently, we find Sandy City's objection to be without merit.

We affirm the trial court's finding against Sandy City on this issue, even though we assign a totally different rationale than that used by the trial court. *See, e.g., Ostler v. Ostler,* 789 P.2d 713, 716 (Utah Ct.App.1990).

### B. Urban Development

Utah Code Ann. § 10–2–418 (1986) states that "[u]rban development shall not be approved or permitted within one-half mile of a municipality in the unincorporated area which the municipality has proposed for municipal expansion in its policy declaration." "Urban development" is defined in Utah Code Ann. § 10–1–104(11) (1986) as

---

**4.** We note that the property at issue consists of 4.18 acres while section 10–2–418 applies to parcels consisting of at least five acres. There-

fore, section 10–2–418 would be inapplicable in the present case.

"a housing subdivision involving more than 15 residential units with an average of less than one acre per residential unit or a commercial or industrial development for which cost projections exceed $750,000 for any or all phases."

Pursuant to its objective of preventing the proposed development of the disputed territory, Sandy City argues that the trial court erred in finding the value of the proposed development did not exceed $750,-000 because (1) the definition of "urban development" under section 10–1–104 includes not only the value of the building itself, but also the cost of the land and the value of the building fixtures; and (2) the $750,000 figure encompasses all commercial ventures to be built on the disputed territory. Salt Lake County, on the other hand, alleges that the only relevant cost under the definition is that of the building alone and does not include the land and building fixtures, and that the $750,000 figure applies to each individual development venture separately initiated on the property.

█ Again, because Sandy City has not made any attempt to annex the territory and should have raised its objections to urban development at the time of the zoning determination rather than at the subsequent granting of a conditional use permit, we decline to interpret this statute. Because the interpretation of section 10–2–414 would have no relevance to the propriety of the county's grant of a conditional use permit under our standard of review, any interpretation we would make would be an advisory opinion, which we decline to issue under well established standards of judicial review. *See Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1357 (Utah Ct.App.1990) (where the result in the prior action constitutes the full relief available to the parties on the same claim, or where the issue could and should have been litigated in the prior action, the claim is precluded under the doctrine of res judicata); *Reynolds v. Reynolds*, 788 P.2d 1044, 1045 (Utah Ct.App.1990) (there is a long-standing judicial policy in Utah to avoid

advisory opinions). Therefore, we find this issue to be without merit.

JACKSON, J., concurs.

BENCH, J., concurs in the result.