2004 UT App 487

**Jesse RIDDLE, Plaintiff and Appellant,**

v.

**CELEBRITY CRUISES, INC., Defendant and Appellee.**

**No. 20030954–CA.**

Court of Appeals of Utah.

Dec. 30, 2004.

---

Denver C. Snuffer Jr., Nelson Snuffer Dahle & Poulsen, Sandy, for Appellant.

Randy L. Dryer and Michael P. Petrogeorge, Parsons Behle & Latimer, Salt Lake City, for Appellee.

Before Judges BENCH, JACKSON, and ORME.

---

1. Both parties concede that the advertisement Riddle received was a pop-up advertisement. A "pop-up ad" is defined as "an online advertisement that is displayed in a new browser window." Webster's New Millennium Dictionary of English (2003), http://dictionary.reference.com/search?q=pop-upäd (last visited Dec. 27, 2004).

2. Although the Act was repealed effective May 3, 2004, see Utah Code Ann. §§ 13–36–101 to –105 (Supp.2004), it was still in effect at the time Riddle viewed the pop-up ad in question, and the

## OPINION

ORME, Judge:

¶ 1 Appellant Jesse Riddle appeals from the trial court's decision that "pop-up" advertisements do not fall within the ambit of Utah's Unsolicited Commercial and Sexually Explicit Email Act. We affirm.

## BACKGROUND

¶ 2 On May 10, 2002, while Riddle was "surfing" the Internet at his law office in Salt Lake City, a pop-up advertisement [1] enticing computer users to "enter to win a free cruise" on appellee Celebrity Cruises' vacation ship "Constellation" appeared on Riddle's computer screen. Unlike some pop-ups, the appearance of this one was not completely irrational because—at least according to Celebrity Cruises' counsel—Riddle was perusing the travel section of the *Los Angeles Times's* website.

¶ 3 On June 5, 2002, Riddle filed an action in district court alleging that the pop-up ad he had received violated Utah's Unsolicited Commercial and Sexually Explicit Email Act (the Act), Utah Code Ann. §§ 13–36–101 to –105 (Supp.2003) (repealed effective May 3, 2004).[2] On June 24, 2003, Celebrity Cruises filed a motion for summary judgment. Riddle then filed a motion for relief under rule 56(f) of the Utah Rules of Civil Procedure, which was ultimately denied by the trial court. In October of 2003, the trial court granted Celebrity Cruises' motion for summary judgment. Riddle appeals.

## ISSUES AND STANDARDS OF REVIEW

▮ ¶ 4 We must decide whether the Legislature intended to regulate, under the Act, the use of pop-up ads of the type about which Riddle complains.[3] *See* Utah Code Ann.

---

Act's repeal does not affect the outcome of this case.

3. We exclude from our discussion pop-up ads that "pop up" in e-mail messages sent to a computer user's personal e-mail account and are viewed by the user in the course of reading his or her e-mail. Therefore, our discussion is limited to pop-up ads that appear on the user's screen via the user calling up the host website. We emphasize that the pop-up ad Riddle complains of did not appear on Riddle's screen via accessing his e-mail account, but rather appeared on his screen while he was surfing the Internet.

§§ 13–36–101 to –105 (Supp.2003) (repealed effective May 3, 2004). Riddle argues that the term "email" as defined by the Act encompasses all electronic transmissions, and more specifically, pop-up ads. The trial court rejected this argument and held that "the Act does not apply to pop-ups." Because "[t]he interpretation of a statute ... presents a question of law," we review the trial court's decision for correctness, giving no particular deference to the trial court's interpretation. *Parks v. Utah Transit Auth.*, 2002 UT 55,¶ 4, 53 P.3d 473.

¶ 5 Riddle also contends that the trial court erred in refusing to permit him to conduct further discovery pursuant to rule 56(f) of the Utah Rules of Civil Procedure. A trial court's ruling on a motion for continuance under rule 56(f) is reviewed under an abuse of discretion standard. *See Price Dev. Co. v. Orem City*, 2000 UT 26,¶ 9, 995 P.2d 1237.

## ANALYSIS

¶ 6 The Act places reasonable limitations on the sending of unsolicited commercial and sexually explicit e-mail. (Given the nature of this case, we confine our discussion to e-mail that is commercial in nature.) The Act requires persons sending such e-mail to include certain identifying characteristics on the face of and in the body of the e-mail. These distinctive characteristics notify computer users that the e-mail being sent to them contains commercial material and gives them the option of deleting the e-mail before ever viewing its content. Riddle argues that the definition of "e-mail" encompasses pop-up ads and therefore subjects pop-ups to the same limitations that the Act places on "traditional" e-mail. We disagree that the Legislature intended the definition of e-mail to be interpreted so broadly.

¶ 7 "When faced with a question of statutory construction, we look first to the plain language of the statute." *World Peace Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994). If the statute's plain language is clear and unambiguous, we need not "seek guidance from the legislative history." *Id.* Here, the Act, on its face, is clear and unambiguous that it does not cover the type of pop-up ads about which Riddle complains. Therefore, we need not consider the legislative history and instead look only to the statute's plain language.

¶ 8 We emphasize that "[w]e read the plain language of the statute *as a whole*, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12,¶ 17, 66 P.3d 592 (emphasis added). In so doing, we adhere to " ' "the cardinal rule that the general purpose, intent, or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object." ' " *Id.* (citations omitted). Therefore, to avoid interpreting the statute in a "piecemeal fashion," we interpret the terms of the Act as a "comprehensive whole." *Business Aviation of S.D., Inc. v. Medivest, Inc.*, 882 P.2d 662, 665 (Utah 1994).

¶ 9 "Email" is defined under the Act as "an electronic message, file, data, or other information that is transmitted: (a) between two or more computers, computer networks, or electronic terminals; or (b) within a computer network." Utah Code Ann. § 13–36–102(3) (Supp.2003) (repealed effective May 3, 2004). Admittedly, if we read this definition of e-mail in isolation, as Riddle urges us to do, it appears to be broad enough to include pop-up ads. A comprehensive reading of the Act, however, reveals that the Legislature did not intend to regulate the use of pop-up ads under the terms of the Act. Construing the Act to include pop-up ads would render other terms and provisions in the Act "inoperative" or "superfluous," which we are loathe to do. *State v. Hunt*, 906 P.2d 311, 312 (Utah 1995).

¶ 10 The reach of the Act is limited to regulating "[e]ach person who sends or causes to be sent an unsolicited commercial email ... through the intermediary of an email service provider located in the state or to an email address held by a resident of the state." Utah Code Ann. § 13–36–103(1). Therefore, to be liable under the Act, a person must send an e-mail either through an e-mail service provider located in Utah or to an e-mail address held by a resident of Utah. Riddle does not contend that the pop-up ad

was sent through an e-mail service provider located in Utah. We thus need only consider whether the pop-up ad Riddle received was sent to his e-mail address.

¶ 11 The term "Email address" is defined under the Act as "a destination, commonly expressed as a string of characters, to which email may be sent or delivered." *Id.* § 13–36–102(4). Crucial to our analysis of whether a pop-up ad is "sent or delivered" to an e-mail address is a proper understanding of the fundamental difference between traditional e-mail, if one dare use that phrase, and pop-up ads.

¶ 12 An e-mail is akin to a paper letter or note. It is essentially an electronic letter. *See Reno v. ACLU,* 521 U.S. 844, 851, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). Just as a paper letter is sent through the medium of a post office to a specifically defined destination, an e-mail is sent electronically, through the medium of an Internet service provider, to a computer user's unique e-mail address. The e-mail is targeted to a specific person at a specific address. *See generally id.* (explaining the mechanics and purposes of e-mail).

¶ 13 Pop-ups, on the other hand, are not sent to specifically predefined destinations. The host website produces the pop-up by directing the browser to open another window and display particular content. By way of analogy, a pop-up ad is similar to a newspaper advertisement. As Celebrity Cruises points out,

> [j]ust as a newspaper advertisement ... is transmitted along with and as part of the primary media—i.e., the newspaper ..., and received by the reader ... as a result of his or her decision to subscribe to the newspaper ..., the "pop-up" ... advertisement is transmitted along with and as part of the primary media—i.e., the host website, and received by the Internet user as a result of his or her decision to call up the host website.

¶ 14 A pop-up, we are told, is a window that appears on a computer user's screen only when the host website is called up by a user. Because the Act's application is limited to e-mail sent to e-mail addresses

and pop-ups are not sent to e-mail addresses, pop-up ads simply do not come within the Act's definition of e-mail.

¶ 15 Other provisions of the Act further demonstrate that the Legislature did not intend to regulate the use of pop-up ads. For example, the Act requires that all e-mail that comes within the Act's regulatory scheme contain the designation "ADV:" as the first four characters of the e-mail's subject line. *See* Utah Code Ann. § 13–36–103(b)(i). This serves to notify the e-mail recipient that the e-mail is commercial in nature, which gives the recipient the option of either deleting the e-mail without ever viewing it or opening it *knowing* that the e-mail is an advertisement. In contrast, pop-up ads do not have subject lines and appear regardless of whether the user wants to view the advertisement. Once the pop-up ad appears the user must close the browser window if he or she wishes to delete the advertisement without reading it. Any requirement to include the "ADV:" designation on the subject line of a pop-up ad would be meaningless because there is no subject line per se. If there were some text in the pop-up that could be regarded as a de facto subject line, adding the "ADV:" designation would not make it any easier for the user to identify the pop-up as an advertisement—which it obviously is—and expedite the decision to delete it from the screen.

¶ 16 Moreover, if the pop-up ad sent to Riddle's computer could somehow be viewed as an e-mail, it likely would be regarded as a solicited e-mail—given that Riddle chose to surf the Internet and, apparently, to visit the *Los Angeles Times* website looking for travel information—and thus would fall outside the scope of the Act. *See* Utah Code Ann. § 13–36–101 to –105 (repealed effective May 3, 2004) (regulating, in section 13–36–103(1), those "person[s] who send[ ] or cause to be sent an *unsolicited* commercial email") (emphasis added).

¶ 17 Riddle also contends that the trial court erred in denying his motion to conduct further discovery pursuant to rule 56(f) of the Utah Rules of Civil Procedure. Rule 56(f) permits a party to request the continuance of a court's consideration of a

motion for summary judgment to allow the party to conduct further discovery, if the party can demonstrate the need for an extension of time. *See* Utah R. Civ. P. 56(f). The rule requires the movant to "file an affidavit to preserve his or her contention that summary judgment should be delayed pending further discovery," and to "explain how the requested continuance will aid his or her opposition to summary judgment." *Sandy City v. Salt Lake County*, 794 P.2d 482, 488 (Utah Ct.App.1990), *rev'd in part on other grounds*, 827 P.2d 212 (Utah 1992). Here, the trial court properly refused to allow Riddle to conduct further discovery because Riddle failed to explain in his affidavit how additional discovery would "aid his ... opposition to summary judgment." *Id.* Moreover, given our analysis and resulting legal conclusion, no amount of discovery would have enabled Riddle to defeat the motion for summary judgment.

## CONCLUSION

¶ 18 Riddle's interpretation of the Act fails because construing the Act, as a whole, to include pop-up advertisements would contravene its plain language. In addition, his motion for relief under rule 56(f) of the Utah Rules of Civil Procedure was properly denied.

¶ 19 Affirmed.

¶ 20 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and NORMAN H. JACKSON, Judge.