## UTAH COPPER CO. v. ECKMAN.

No. 2731.   Decided October 6, 1915.   (152 Pac. 178).

1. ADVERSE POSSESSION—PROPERTY SUBJECT TO PRESCRIPTION—PUBLIC LANDS. There could be no adverse possession of land prior to the passing of title thereto from the United States government, where the person claiming title by adverse possession did not seek to acquire title from the United States upon a *bona fide* claim other than that of adverse possession, but was asserting a claim of title hostile to the title of the government.[1] (Page 168.)

2. ADVERSE POSSESSION—PAYMENT OF TAXES—STATUTORY PROVISIONS. Under Comp. Laws 1907, Sec. 2504, providing that mines and mining claims shall be taxed at the price paid the United States therefor, unless the surface ground or some part thereof is used for other than mining purposes and has a separate and independent value for such other purposes, in which case such surface ground shall be taxed at its value for such other purposes, a person in actual and adverse possession of the surface ground of a mining claim for the period of time required by statute, who has during that time improved the surface under a claim of right, may be assessed with such surface area and the improvements thereon, and the payment of the taxes so assessed will entitle him to make a claim of adverse possession to such surface ground, together with the improvments, as against the owner of the mining claim, though such owner may have paid the taxes on the mining claim and may claim all the minerals beneath the surface.[2] (Page 170.)

3. ADVERSE POSSESSION—PLEADING—SUFFICIENCY. Though it may be that under an allegation of general ownership a party may prove adverse possession and payment of taxes, it will not vitiate the pleading, though not absolutely necessary, if the pleader states his claim a little more specifically. (Page 170.)

4. ADVERSE POSSESSION—PROOF—FINDINGS—SUFFICIENCY. However general the pleadings in a suit in which title to the surface ground of a mining claim by adverse possession is claimed, the evidence and findings upon the question of payment of taxes should be direct and specific, and it should be found whether merely surface possession, together with the improvements, is claimed, or whether the title to the whole claim is asserted and in either event the assessment and payment of taxes should be shown and found, so that from a mere inspection of the findings it can be determined whether the doctrine that title may be ac-

quired by adverse possession and the payment of taxes on the surface ground of a mining claim with its improvements applies. (Page 170.)

5. IMPROVEMENTS—STATUTORY PROVISIONS—ADJUDICATION OF TITLE. A claim for the value of improvements placed upon the land of another as an occupying claimant, can only be made after the title is adjudicated to be in a person other than the claimant of such improvements.[3] (Page 172.)

Appeal from District Court, Third District; Hon. *T. D. Lewis,* Judge.

Action by the Utah Copper Company against Victor Eckman.

Judgment dismissing the complaint. Plaintiff appeals.

REVERSED and REMANDED, with directions.

*Parsons & Parsons* for appellant.

*Willard Hanson* for respondent.

FRICK, J.

This was an action in ejectment to recover possession of a small parcel of ground about 5,665 square feet of the surface area of what is called the Copper Cent lode mining claim, and also another still smaller area of the Mirror lode mining claim, located in the town of Bingham Canyon, Salt Lake county, Utah. The area of the first-mentioned claim, if it were placed in rectangular form, would make a parcel of ground about 56x100 feet, and the smaller area, if carved into the same shape, would approximately make a parcel about 11x100 feet. The plaintiff alleged ownership in fee, that it was entitled to the immediate possession of said ground as part of the mining claims aforesaid, and that the defendant

---

[1] *Steele* v. *Boley,* 7 Utah 64; 24 Pac. 755; *Toltec Ranch Co.* v. *Babcock,* 24 Utah 193; 66 Pac. 876; *Lund* v. *Wilcox,* 34 Utah 205; 97 Pac. 33.

[2] *Utah Copper Co.* v. *Chandler,* 45 Utah 85; 142 Pac. 1119.

[3] *Fares* v. *Urban,* .. Utah ..; 151 Pac. 57.

was wrongfully in possession of the particular areas before stated. The defendant admitted his possession of the parcels of ground in question, and alleged as a counterclaim that:

"On the 30th day of September, A. D. 1900, one R. S. Julian was the owner in fee simple, in the possession, and entitled to the possession of said premises, and that by virtue of mesne conveyances from said R. S. Julian and his successors in interest defendant has, since the 24th day of June, 1906, been the owner, in the possession, and entitled to the possession of said premises, asserting title thereto in good faith and in the full belief that he and his predecessors in interest by virtue of said different conveyances had good title and still continue to hold and possess said premises."

It is further alleged that he had made permanent improvements on said premises of the value of $3,000, that the value of said parcels of ground is $4,000, and that "he and his predecessors in interest for more than ten years have paid taxes and all other assessments against said property." The defendant prayed judgment:

That plaintiff's complaint be dismissed, and that the defendant "be given a decree awarding him the right of possession of said premises, or, if the plaintiff be adjudged entitled to recover possession of said premises, that defendant's claim for improvements be tried, and that he recover the same as provided by law, and for such other and further relief as to the court may seem just and equitable."

We remark that we have set forth the allegations of defendant's counterclaim and his prayer in full, for the reason that the allegations respecting the character of his title— that is, whether he claims it to be a title in fee from the original source or one by adverse possession and payment of taxes —are somewhat obscure, and so is his prayer. It will be observed that, if the defendant claims title in fee from the original source of title, then his defense is purely legal; but if he claims title by adverse possession and payment of taxes under our statute, his defense would be equitable. Of course, his claim for the value of improvements is equitable, but that is not a defense to the action.

After a hearing upon the foregoing issues the court found the facts as follows:

"That on or about the 30th day of Setember, 1900, and for a long time prior thereto, one R. S. Julian was the owner, in the possession, and entitled to the possession of the premises hereinafter described, and on said day duly conveyed the same to defendant's grantors, and ever since said 30th day of September, 1900, and for a long time prior thereto, defendant and his grantors have been in the possession of said premises, have erected dwellings thereon, and have made other substantial improvements, and have paid all taxes assessed against said premises during all of said time, and have for more than ten years openly and notoriously claimed and held possession adverse to plaintiff and its grantors."

No other material finding of fact was made by the court.

The court also made the following conclusions of law upon the facts:

"As a conclusion from the foregoing facts the court finds that the defendant is entitled to a decree awarding him the possession and right to possession of said premises."

Upon the facts and conclusion of law aforesaid judgment was entered by which it is adjudged that the defendant "be given the possession, the right to possession, and the title to said property," which is fully described as it is described in plaintiff's complaint. It was also adjudged "that plaintiff's complaint be dismissed." The plaintiff appeals from the judgment.

The findings of fact and conclusions of law and judgment are assailed. The evidence, without dispute, was to the effect that title to the Mirror lode claim passed from the United States by patent on December 18, 1901, and that the Copper Cent lode claim went to patent on May 21, 1907. At the trial plaintiff traced its title to the original source—that is, back to the United States—while defendant, for the purpose of establishing his title, relied exclusively on adverse possession and payment of taxes as required by our statute. In view that this action was commenced July 1, 1911, and that it is undisputed that the title to the Copper Cent lode mining claim did not pass from the

United States until May 21, 1907, we cannot see how, under the decisions of this court and of the Supreme Court of the United States, the defendant can sustain his title by adverse possession to the area in question so far as it relates to the claim last mentioned: The rule which is applicable to a case like the one at bar is very clearly stated by Mr. Justice Field in *Gibson* v. *Chouteau,* 13 Wall. 103, 20 L. Ed. 534, in the following words:

"But neither in a separate suit in a federal court nor in an answer to an action of ejectment in a state court can the mere occupation of the demanded premises by plaintiffs or defendants for the period prescribed by the statute of limitations of the state be held to constitute a sufficient equity in their favor to control the legal title subsequently conveyed to others by the patent of the United States, without trenching upon the power of Congress in the disposition of the public lands. That power canont be defeated or obstructed by any occupation of the premises before the issue of the patent, under state legislation, in whatever form or tribunal such occupation be asserted.

That case was followed in *Redfield* v. *Parks,* 132 U. S. 248, 249, 10 Sup. Ct. 83, 33 L. Ed. 327, and in *Hays* v. *United States,* 175 U. S. 260, 20 Sup. Ct. 80, 44 L. Ed. 150. This court, as it was bound to do, followed the doctrine laid down in the foregoing cases in *Steele* v. *Boley,* 7 Utah 64, 24 Pac. 755, *Toltec Ranch Co.* v. *Babcock,* 24 Utah, 193, 66 Pac. 876, and in *Lund* v. *Wilcox,* 34 Utah, 205, 97 Pac. 33, although in the latter case only an easement was in question. The principle which is applicable to the case at bar must, however, not be confounded or confused with the doctrine of adverse possession laid down in the following cases: *Blumer* v. *Iowa, etc., Land Co.,* 129 Iowa, 32, 105 N. W. 342, 113 Am. St. Rep. 444; *Missouri Valley Land Co.* v. *Wiese,* 208 U. S. 234, 28 Sup. Ct. 294, 52 L. Ed. 466; *Boe* v. *Arnold,* 54 Or. 52, 102 Pac. 290, 20 Ann. Cas. 533, and note. The doctrine that prevailed in those cases is stated by the Supreme Court of Oregon in *Boe* v. *Arnold, supra,* in the following words:

"One claiming title to land by adverse possession for (the statutory period) as against all persons, but recognizing the superior title of the United States government, and seeking in good faith to acquire that title, may assert such adverse possession as against any person claiming to be the owner under a prior grant" from the government.

It is clear that the case at bar, as to the Copper Cent lode, does not come within that doctrine. Here the defendant, by adverse possession, seeks to defeat the legal title of the plaintiff to the latter lode, which it had acquired from the United States less than seven years before the action was commenced. Nor does the defendant seek to acquire title from the United States upon a bona fide claim other than that of adverse possession. His claim of title as to the Copper Cent lode is therefore hostile to the title of the United States to the extent that he desires to avail himself of his alleged possession while the title remained in the government of the United States. That he may not do, according to all of the decisions. Under our statute it requires seven years' actual adverse possession and the payment of all lawful taxes levied and assessed against the property in order to acquire title by adverse possession. In view that the title of the Copper cent lode mining claim only passed out of the United States on May 21, 1907, and the action was commenced on July 1, 1911, defendant's possession, under the foregoing authorities, could have become adverse only from and after the 21st of May, 1907, when the patent was issued. This gave the defendant only a little over four years adverse possession when the action was commenced; and hence the court erred in its conclusion of law and in entering judgment in favor of defendant in so far as it affected the area in controversy of the Copper Cent lode mining claim.

The Mirror lode mining claim was, however, patented on December 18, 1901, or more than nine years before this action was commenced, during all of which time, according to the evidence and findings of the court, the defendant and his predecessors in interest were in actual possession under claim of right of the area in dispute on said **2, 3, 4** claim and paid the taxes upon said area and on the improvements placed thereon. It appears from the evidence that the surface area in dispute has for many years been platted into town lots, and that the defendant was in possession of the lots covering that area and paid the taxes thereon, and also paid them upon the improvements, consisting of several dwelling houses. Upon the other hand, both of the

mining claims were also assessed to appellant.   But whether
they were merely assessed to it in the character of mining
claims is not made to appear.   Under our statute (Comp.
Laws 1907, section 2504), as pointed out in the recent case
of *Utah Copper Co.* v. *Chandler*, 45 Utah, 85, 142 Pac. 1119,
mining claims, as such, may be assessed at the specific valua-
tion fixed by the statute, while the surface ground thereof, if
used for other than mining purposes, if it has a value separate
and independent from the mining claims as such, may also be
assessed separately and distinct from the mining claims.   It
is accordingly held in that case that, under the statute, if
a person is in actual and adverse possession of .the surface
ground of a mining claim for the period of time required by
our statute, and has, during that time, improved the surface
under a claim of right, such person may be assessed with
such surface area and the improvements thereon, and that he
may pay the taxes so assessed. and such payment will be
sufficient to entitle him to make a claim of adverse possession
to such surface ground, together with the improvements
thereon, as against the owner of the mining claim, although
the latter may also have paid the taxes on the mining claim
as such and in accordance with the fixed statutory valuation
aforesaid, and may claim all the minerals beneath the surface.
While it is quite clear that in this case the surface area of the
Mirror lode mining claim which is in controversy here was
used and improved by the defendant for other than mining
purposes, and that such surface area and improvements had
a value separate and distinct from said mining claim as such,
yet it does not appear that in assessing that mining claim to
appellant, who held the legal title thereof, it was not assessed
to it for all purposes; that is, for the purpose of a mining
claim, and also for such other purposes as the surface thereof
was devoted to.   If, therefore, the mining claim and the im-
provements thereon were assessed to the appellant, and the
improvements were also assessed to the defendant, then the
assessment would have been a double assessment, and it might
be that the plaintiff could not avail itself of the payment of
taxes on the improvements.   As we have already pointed out,
however, the allegations of defendant's counterclaim are:

neither direct nor specific in any particular, and from the allegations it would seem that he relied upon a fee-simple title merely. While it may be true that under an allegation of general ownership a party, either plaintiff or defendant, may prove the character of such ownership by proving adverse possession and payment of taxes, yet, however general the pleadings in that regard may be in case the surface ground of a mining claim is in question, the evidence and findings upon the question of payment of taxes should be direct and specific, and it should also be found whether merely surface possession, together with the improvements, is claimed, or whether the title to the whole claim is asserted. In either event the assessment and payment of taxes should be shown and found, so that from a mere inspection of the findings it can be determined whether the case falls within the doctrine of *Utah Copper Co.* v. *Chandler, supra,* or not. In such cases it would, however, not vitiate the pleading, although not absolutely necessary to a statement of a good cause of action, if the pleader were a little more specific in stating his claims.

The defendant in his counterclaim also asserts a right under our occupying claimant statute. In view, however, that the court found in favor of the defendant upon the issue of title, his claim under the occupying claimant statute was not and could not have been considered. If, therefore, the defendant has paid the taxes upon his improvements within the rule laid down in *Utah Copper Co.* v. *Chandler, supra,* and has made said imporvements in good faith, it would seem that he brings himself squarely within the provisions of Comp. Laws 1907, section 2024, as an occupying claimant. As it is made to appear, however, from the recent case of *Fares* v. *Urban,* 46 Utah, ——, 151 Pac. 57, that claim can only be made after the title is adjudicated to be in a person other than the claimant of the improvements. In view, therefore, that the legal title to the Copper Cent lode is in the plaintiff, and as it appears that some of the defendant's improvements are on said lode, he, after the remittitur in this case goes down, may file his petition for the improvements as suggested in *Fares* v. *Urban, supra,* and have the question respecting his rights in that regard determined.

By what we have said we do not wish to be understood as passing upon the question of whether the defendant should or should not recover the value of his improvements. That question must be determined upon his petition after the same is filed and issue is joined thereon. If such a petition be filed by the defendant, the court should hear the evidence and find the facts with regard to the assessment and payment of taxes as herein suggested, and should also find the facts with regard to the improvements and the value thereof, and also the value of the surface area of the Copper Cent lode, of which the defendant is in possession, together with any other facts that should be found under the occupying claimant statute, or, if the issues presented by the petition for improvements and the answer thereto are tried to a jury, then the jury, under proper instructions, should be required to find the necessary facts under the statute.

In view that the findings with respect to the assessment and payment of taxes are not complete, we cannot even affirm the judgment with respect to the disputed area of the Mirror lode, although, as we have seen, the defendant seems to have been in possession of the portions of the surface area of that lode for the length of time required by our statute after the title had passed from the United States to acquire title thereto by adverse possession.

We are compelled, therefore, to reverse the judgment *in toto* and require the court to make the necessary findings with respect to the assessment and payment of taxes. The court may do that upon the evidence already before it, if it can; otherwise it may hear further evidence upon that subject, and then make the requisite findings. The court is also directed to find the facts respecting defendant's possession of the surface area of the Copper Cent lode in accordance with the views herein expressed, and to adjudge that the legal title to that lode, including the surface area in dispute, is in the plaintiff, and in case the defendant files a petition to recover for his improvements on that lode, then to hear the evidence with respect thereto, and to make the necessary findings of fact, conclusions of law, and enter judgment according to

the evidence and in accordance with the views herein expressed.

The judgment is accordingly reversed, and the cause is remanded to the district court of Salt Lake County, with directions to proceed with the case as hereinbefore indicated; costs to appellant.

STRAUP, C. J., and McCARTY, J., concur.