## UNITED PARK CITY MINES COMPANY, a corporation, Plaintiff and Respondent,

v.

ESTATE OF Vernon H. CLEGG, Zula C. Brinkerhoff, Burk O. Clegg, personally and as personal representative of the Estate of Neil C. Clegg, TIDC, Inc., a corporation, Dawnette Schaffer Clegg, Carol Ann C. Zoellner, Verna J. Allgier, George V. Clegg, personally and as personal representative of the Estate of Vernon H. Clegg, Verdon C. Brinkerhoff, Leon D. Brinkerhoff, Dermont A. Brinkerhoff, La Verle C. Giles, Sandra London, Dorothy Clegg, Ted Clegg, and Boyd Clegg, Defendants and Appellants.

Nos. 18835, 18841.

Supreme Court of Utah.

March 31, 1987.

Richard H. Thornley, Ogden, for defendants and appellants.

Douglas L. Davies, Lowell V. Summerhays, Edward T. Wells, Alan L. Sullivan, Harriett Styler, Salt Lake City, for plaintiff and respondent.

STEWART, Associate Chief Justice:

United Park City Mines Company (United Park) brought this action in district court to quiet title to nine patented mining claims in Summit County. Some of the defendants (the Cleggs) counterclaimed to quiet title in them. The Cleggs argued, among other things, that they had obtained title to the surface estate by adverse possession. At the close of evidence on the Cleggs' adverse possession claim, United Park moved for a directed verdict on that claim and the Cleggs' other claims. The trial court granted the motion on the adverse possession claim only. The Cleggs appeal this directed verdict claiming adverse possession founded upon a written instrument. We affirm.

## I.

On May 22, 1929, Charles David Clegg (C.D. Clegg) and his wife, Martha Clegg, received a patent from the United States for approximately 172 acres of mining claims in Park City. They previously held unpatented claims to the same property which they transferred by mineral deed to the Silver King Extension Mining Company (Silver King), a corporation formed by C.D. Clegg and Clarence Bamberger for the purpose of holding the claims. After the patents were received, C.D. Clegg and his wife transferred the patented claims, again by mineral deed, to Silver King. The mineral deeds transferred both the surface and mineral estates, although the Cleggs claimed below that they thought the surface estate had been reserved. In ex-

change for the claims, C.D. Clegg and his son Neil received one-half of the stock of Silver King. Over the next two decades, Silver King occasionally worked the mining claims. C.D. Clegg, and later his son Vernon Clegg, personally worked the claims for Silver King pursuant to an agreement. C.D. Clegg died in 1961, and his stock in Silver King passed to his children. Silver King transferred its entire interest in the mining claims to United Park in 1974 upon the dissolution of Silver King. The Cleggs consented to this dissolution and sale.

For several years, the Cleggs, by a series of written and oral leases, leased the surface estate of the mining claims to a Gillmor family. The Gillmors in turn traded the lease to the Jordan Livestock Company. The Jordan Livestock Company used the surface two to three months out of each year for grazing sheep. Other possessory activities claimed by the Cleggs include activities directly related to the mineral estate, such as building and maintaining a small building to house a compressor and maintaining the Silver King Extension Tunnel and a dirt road from the tunnel to the mine dump. The Cleggs also used the surface for recreational activities, such as picnicking and riding dirt bikes and dune buggies.

From 1931 to the commencement of this action, the Utah State Tax Commission levied and assessed taxes to Silver King and United Park on the mining claims and separately on the compressor pursuant to U.C.A., 1953, §§ 59–5–3 and –57 (1974 ed.). Prior to 1979, Summit County never made a separate assessment on the surface. The Cleggs were aware that Silver King paid taxes on the mining claim. In 1979, shortly before this action was commenced, the Cleggs requested Summit County to assess them for the value of the surface estate. The County complied and assessed taxes on the surface estate for the years 1979, 1980, and 1981, and the Cleggs paid those taxes. They made no effort prior to 1979 to pay taxes on the surface value.

The Cleggs argue that they had a claim of title to the surface based on the mineral deeds because they thought the deeds conveyed only the mineral estate. Under these deeds they claim adverse possession founded upon a written instrument pursuant to U.C.A., 1953, §§ 78–12–8 and –9 (1977 ed.). But the Cleggs also assert that they did not have to pay taxes on the surface estate pursuant to § 78–12–12 because separate taxes were never assessed. We hold, however, that under these circumstances, the Cleggs should have affirmatively sought tax assessments on the value of the surface estate as used for other than mining purposes to establish a prima facie adverse possession claim. We need not, therefore, address the Cleggs' other arguments.

## II.

■ For the Cleggs to prevail in an adverse possession claim, they must show that "all taxes which have been levied and assessed upon such land according to law" were paid by them for the statutory seven-year period. § 78–12–12. Taxes were levied and assessed on mining claims during the relevant period pursuant to § 59–5–57, which at the time read in relevant part as follows:

All metalliferous mines and mining claims ... shall be assessed at $5.00 per acre and in addition thereto at a value equal to two times the average net annual proceeds thereof for the three calendar years next preceding or for as many years next preceding as the mine has been operating, whichever is less; ....
All machinery used in mining and *all property or surface improvements upon or appurtenant to mines or mining claims and the value of any surface use made of mining claims or mining property for other than mining purposes* shall be assessed at thirty per cent of their reasonable fair cash value. *In all cases where the surface of lands is owned by one person and the mineral underlying such lands is owned by another, such property rights shall be separately assessed to the respective owners.* In such cases the value of the surface if it is used for other than mining purposes shall be assessed by the assessor of the county in which the property is situated.

(Emphasis added.) Thus, when the surface and mineral estates of a mining claim are owned by the same person, only one tax is assessed on the claim. This is because the statute provides for separate assessment of the surface only when the surface and mineral estates are owned by different owners. The statute makes no other provision for separate assessment of the two estates. Therefore, separate taxation of surface and mineral interests does not constitute double taxation because the separate taxes would be on different property interests. Although provision is made for the separate assessment of mining machinery, property, surface improvements, and the value of nonmining surface uses, those assessments are made regardless of whether the surface and mineral estates are held in common, as is demonstrated by the Tax Commission's separate assessment of the compressor in this case. The statute further provides that the county assessor is the taxing authority that assesses the value of a surface estate owned by someone other than the owner of the mineral estate.

■ A single tax assessment when the mineral and surface estates of a mining claim are held in common is appropriate, *Telonis v. Staley*, 104 Utah 537, 541–42, 144 P.2d 513, 515 (1943), especially since mining claims presumptively include both the surface and mineral estates, unless a severance has occurred. *Mammoth Mining Co. v. Juab County*, 10 Utah 232, 236, 37 P. 348, 348 (1894).

■ Nonetheless, a surface user can adversely possess the surface estate even when the owner of both the surface and mineral estates of a mining claim has paid the taxes assessed on the claim, if the surface user pays all taxes which are lawfully assessed for his or her surface use unrelated to mining. *Utah Copper Co. v. Eckman*, 47 Utah 165, 171, 152 P. 178, 180 (1915); *Utah Copper Co. v. Chandler*, 45 Utah 85, 87, 142 P. 1119, 1120 (1914). In both *Eckman* and *Chandler*, the surface

of the mining claims had been subdivided and the surface users were assessed property taxes by the county pursuant to the predecessor of § 59-5-57 for the surface lots they occupied and for buildings they had placed thereon. The surface lots and improvements were used for other than mining purposes. As such, the lots and buildings had value separate and independent from the mining claims and could be separately taxed. Additionally, the possession of the surface and the improvements built thereon placed the county assessor on notice that a use other than mining was being made of the surface. In those cases, no other action was required by the surface user to obtain taxation on the surface.[1]

■ However, before the state or county can separately assess the value of the surface, the assessor must have notice that the surface estate has a value independent from its value as part of the mining claim. If that independent value is not visibly obvious, as it was in both *Eckman* and *Chandler*, the surface user must notify the assessor of that use and request separate assessment.

■ One who seeks to acquire title to real property other than by conveyance must comply precisely with the statutory requirements for doing so. *See Christensen v. Munster*, 1 Utah 2d 335, 337, 266 P.2d 756, 757 (1954). The failure of a person claiming to hold property by adverse possession to have the property taxes assessed to him or her and to pay the taxes assessed for a substantial period of time, especially when he or she knows the legal owner is paying all taxes assessed, is strong evidence that the possessor did not in reality claim title to the property. *Home Owners' Loan Corp. v. Dudley*, 105 Utah 208, 223, 141 P.2d 160, 167–68 (1943). *See also Todd v. Weed*, 84 Minn. 4, 7, 86 N.W. 756, 757 (1901); *Reeves v. Porta*, 173 Or. 147, 157, 144 P.2d 493, 497 (1944).

■ The Cleggs claim they thought they had owned the surface estate since 1929. However, they can hardly claim they did

---

1. *Chandler* states in dictum that if no taxes are assessed on a separate surface use, payment of taxes is not necessary to prove adverse possession. *Chandler*, 45 Utah at 87, 142 P. at 1120.

That exception would apply, however, only where the adverse surface use was open and obvious. Such was not the case here.

not know they would have to pay property taxes as surface owners since it is common knowledge in Utah that all nonexempt property owners must pay property taxes. Nonetheless, for fifty years, the family failed to put the county assessor on notice that they thought they owned the surface. Notice could have been given by placing improvements on the property unrelated to mining purposes, as in *Eckman* and *Chandler*, by asking the county to assess the value of the surface as used for sheep grazing, *cf.* § 59-5-18, or by asking why taxes were not assessed if the Cleggs truly thought they owned the surface estate. Instead, the Cleggs allowed Silver King and later United Park to pay the taxes assessed on the mining claim. Under these circumstances, it cannot be said that the Cleggs established a prima facie claim of title to the property. If a party claims ownership of a piece of property, that claim can only be secured by seeking the obligations as well as the benefits of ownership. If that party waits for fifty years to meet those obligations, and then only in the face of imminent litigation, it can hardly be said that title was theretofore claimed.

Affirmed.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.