2009 UT App 230

### Nadine F. GILLMOR and Park City Country Club Estates, Plaintiffs and Appellant,

v.

### BLUE LEDGE CORPORATION, United Park City Mines, Susan A. Megur, and Eremalos Development Corporation, Defendants and Appellee.

No. 20080045–CA.

Court of Appeals of Utah.

Aug. 27, 2009.

David W. Scofield and R. Reed Pruyn Goldstein, Salt Lake City, for Appellant.

Rosemary J. Beless and P. Bruce Badger, Salt Lake City, for Appellee.

Before Judges GREENWOOD, THORNE, and McHUGH.

## OPINION

GREENWOOD, Presiding Judge:

¶1 This case concerns competing claims of title to thirty-one acres in Summit County, Utah (the Property), resulting from conflicting land patents conveyed by the United States Land Office in 1929 and 1930. The trial court granted summary judgment in favor of Defendant Blue Ledge Corporation (Blue Ledge), quieting title in Blue Ledge and voiding the conflicting portion of Plaintiff Nadine F. Gillmor's title. We affirm.

## BACKGROUND

¶2 In 1917, John Clark applied for a homestead grazing patent to the Property. Mr. Clark subsequently died and his wife, Ms. Clark was substituted on the patent application. Between 1925 and 1927, Charles L. Clegg protested the Clarks' patent application. In 1929, the United States issued Mr. Clegg a mining patent to the Property, which patent ultimately passed to Blue Ledge (the 1929 Clegg/Blue Ledge Patent).[1] In 1930, the United States Land Office issued Ms. Clark a homestead patent to an overlapping portion of the Property. By a series of transactions, this patent finally passed to Gillmor (the 1930 Clark/Gillmor Patent). There is no dispute about the validity of the transfers to each party.

¶3 In 1994, Gillmor filed this action against Blue Ledge, alleging record title, or in the alternative, title by adverse possession, and various other claims. Blue Ledge answered Gillmor's complaint and filed a counterclaim for quiet title. In 1996, Gillmor filed a motion for summary judgment on her adverse possession claim. Blue Ledge op-

1. As part of the chain of title, United Park City Mines Company was granted title to the 1929 Clegg/Blue Ledge Patent. In *United Park City Mines Co. v. Estate of Clegg*, 737 P.2d 173 (Utah 1987), the Utah Supreme Court confirmed United Park City Mines Company's title to both surface and mineral estates in the 1929 Clegg/Blue Ledge Patent. *See id.* at 174. According to Blue Ledge, Gillmor's husband, Frank Gillmor, testified that his family leased the surface estate of the Property but made no claims to title.

posed Gillmor's motion for summary judgment, and Gillmor subsequently withdrew her motion, stating that "additional discovery will be required before trial or renewal of Motion for Summary Judgment." Following a series of hearings as to why the case should not be dismissed for failure to prosecute, in 2005 Blue Ledge filed a motion for summary judgment to quiet title in Blue Ledge and for a ruling that Gillmor had failed to prove her adverse possession claim. In November 2005, the trial court granted Blue Ledge's motion for summary judgment on its quiet title claim and denied Gillmor's motion for summary judgment on her adverse possession claim on the grounds that there were factual disputes. In September 2007, Gillmor asked Blue Ledge to settle, and stated that if they could not settle, she would move the trial court to revisit its grant of summary judgment to Blue Ledge. Blue Ledge then moved to dismiss Gillmor's adverse possession claim for failure to prosecute, and the trial court granted this motion in December 2007. In March 2008, the trial court entered final judgment for Blue Ledge, declaring that Blue Ledge is the sole and exclusive owner of the Property and that Gillmor has no interest in it. Gillmor appeals.

## ISSUES & STANDARDS OF REVIEW

¶ 4 We first consider whether the trial court erred in granting summary judgment and thus in quieting title to the Property in Blue Ledge. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (internal quotation marks omitted).

¶ 5 Gillmor also asks us to determine whether the trial court erred when it ruled that she could not assert the federal six-year statute of limitations defense to bar Blue Ledge's quiet title counterclaim. *See* 43 U.S.C. § 1166 (2006). This, too, is a question of law that we review for correctness. *See Orvis,* 2008 UT 2, ¶ 6, 177 P.3d 600.

■ ¶ 6 Finally, Gillmor asks us to determine whether the trial court erred when it dismissed with prejudice her claims and defenses based on adverse possession. "Dismissal for failure to prosecute is a decision within the broad discretion of the trial court. An appellate court, therefore, will not interfere with that decision unless it clearly appears that the court has abused its discretion and that there is a likelihood an injustice has been wrought." *Country Meadows Convalescent Ctr. v. Utah Dep't of Health,* 851 P.2d 1212, 1214 (Utah Ct.App.1993) (internal quotation marks omitted).

## ANALYSIS

### I. Summary Judgment

#### A. Standard for Summary Judgment

¶ 7 The trial court granted summary judgment in favor of Blue Ledge, quieting title to the Property in Blue Ledge. The trial court relied on the "first in time" principle and determined that the 1929 Clegg/Blue Ledge Patent was valid and the 1930 Clark/Gillmor Patent was not, for the simple reason that the United States no longer had any transferable interest in the Property when it issued the 1930 Clark/Gillmor Patent. The essence of Gillmor's argument is that the "first in time" principle does not solve the problem; she asserts there is a presumption of validity in the 1930 Clark/Gillmor Patent because the policy is generally that land patents from the United States are valid. *See, e.g., Maxwell Land–Grant Co.,* 121 U.S. 325, 379, 7 S.Ct. 1015, 30 L.Ed. 949 (1887) ("[A]ll the presumptions are in favor of the validity of the title.").

■ ¶ 8 To prevail on summary judgment, Blue Ledge was required to "show both that there is no material issue of fact *and* that [it] is entitled to judgment as a matter of law." *Orvis v. Johnson,* 2008 UT 2, ¶ 10, 177 P.3d 600 (emphasis in original); *see also* Utah R. Civ. P. 56(c). To do so, Blue Ledge

must establish each element of [its] claim in order to show that [it] is entitled to judgment as a matter of law. In order to meet [this] initial burden on summary judgment, therefore [Blue Ledge] must present evidence sufficient to establish

that [the claim] is appropriate under the facts of the case, and that no material issues of fact remain. The burden on summary judgment then shifts to [Gillmor] to identify contested material facts, or legal flaws in the application of [the claim]. *Orvis,* 2008 UT 2, ¶ 10, 177 P.3d 600.

¶ 9 On appeal, Gillmor asserts that the trial court did not hold Blue Ledge to the appropriate standard when rendering summary judgment. That is, Gillmor argues that to overcome the presumption of validity in the 1930 Clark/Gillmor Patent, Blue Ledge is required to present clear evidence that the 1930 Clark/Gillmor Patent is invalid. *See Maxwell,* 121 U.S. at 379, 7 S.Ct. 1015 ("[T]o annul [a land patent] and destroy the title claimed under it, the facts ... must be clearly established by evidence entirely satisfactory to the court ...."); *see also United States v. Otley,* 127 F.2d 988, 995 (9th Cir.1942) ("[T]he respect due to a patent, the presumption that all the preceding steps required by the law had been observed before its issue, and the immense importance of stability of titles dependent upon these instruments, demand that suit to cancel them should be sustained only by proof which produces conviction.").

¶ 10 Gillmor asserts that Blue Ledge did not present clear evidence at the summary judgment phase that the 1930 Clark/Gillmor Patent was invalid, but merely hypothesized as to why the United States Land Office would erroneously grant the 1930 Clark/Gillmor Patent even though it had already transferred the Property via the 1929 Clegg/Blue Ledge Patent. Ultimately, according to Gillmor, Blue Ledge did not provide evidentiary support for its hypotheses and thus did not meet its summary judgment burden. Gillmor also posits that, even at trial, Blue Ledge will not be able to offer sufficient evidentiary support for its claim because there is none.

¶ 11 Gillmor's argument here is flawed because it improperly contends that the dispute is factual rather than legal. She insists that Blue Ledge is required to show facts that erode her presumption of validity. However, Blue Ledge has shown a clear chain of title leading back to the 1929 Clegg/Blue Ledge Patent, just as Gillmor has shown a clear chain of title leading back to the 1930 Clark/Gillmor Patent. Consistent with Gillmor's argument, both titles are entitled to a presumption of validity. However, the determinative question between them is legal, not factual: Which patent is valid? Both parties have offered legal theories concerning why their patent is valid, and neither party has shown genuine factual disputes. Blue Ledge's legal theory, if it is correct, overcomes Gillmor's presumption without further factual evidence. According to the summary judgment rule above, the burden then shifts to Gillmor "to identify contested material facts, or legal flaws." *Orvis,* 2008 UT 2, ¶ 10, 177 P.3d 600. She has not done so.

[4] ¶ 12 This does not contradict the principle that we "view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* ¶ 6 (internal quotation marks omitted). It simply means that we consider facts, presumptions, and inferences in the light most favorable to the nonmoving party when determining whether there are material factual issues that should go to trial, and if not, whether the trial court ruled correctly as a matter of law. We need not "require the submission to a jury of issues of fact merely because they are disputed.... The pertinent inquiry is whether under any view of the facts [Gillmor] could recover." *Abdulkadir v. Western Pac. R.R. Co.,* 7 Utah 2d 53, 318 P.2d 339, 341 (1957).

¶ 13 Gillmor has not presented evidence sufficient to create a factual dispute regarding Blue Ledge's legal title to the Property, and there has been no assertion that facts may yet be discovered which might change the outcome. *See Downtown Athletic Club v. Horman,* 740 P.2d 275, 278 (Utah Ct.App. 1987) ("[S]ummary judgment should not be granted if discovery is incomplete since information sought in discovery may create genuine issues of material fact sufficient to defeat the motion."). Gillmor had ample opportunity to conduct discovery to show disputed facts but failed to do so. Accordingly, the trial court did not err in concluding that there were no genuine issues of material fact.

We turn then to whether it ruled correctly on the law.

B. Strength of the 1929 Clegg/Blue Ledge Patent

■ ¶ 14 "To succeed in an action to quiet title to real estate, a [party] must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 19, 87 P.3d 734 (internal quotation marks omitted). "[A]ll [a party] need do is prove prima facie that he has title which, if not overcome by [the opposing party], is sufficient." *Babcock v. Dangerfield*, 98 Utah 10, 94 P.2d 862, 863 (1939).

¶ 15 Gillmor argues that the patents are not mutually exclusive and that both can be valid. Gillmor's theory is that the 1929 Clegg/Blue Ledge Patent granted only mineral rights, but the 1930 Clark/Gillmor Patent granted surface rights. We consider relevant federal law in some detail.

1. The 1872 Mining and 1916 Stockraising Homestead Acts

¶ 16 In 1872, Congress enacted major legislation governing mining rights that is essentially still in force today (the Mining Act). *See* Act of May 10, 1872, 17 Stat. 91 (current version at 30 U.S.C. § 21 *et seq.* (2006)). That legislation was intended "to promote the development of the mining resources of the United States ... [and] point[ ] out, with particularity, the procedure to obtain the title to veins, lodes, and placer claims, and define[ ] the extent of each claim to which title might be thus acquired." *Deffeback v. Hawke*, 115 U.S. 392, 401–02, 6 S.Ct. 95, 29 L.Ed. 423 (1885). In short, the Mining Act "provide[s] an incentive for individuals to locate claims to federal land containing 'valuable mineral deposits.'" *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 50–51, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983) (quoting the Mining Act). Section 22 of the Mining Act currently states:

Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining-districts, so far as the same are applicable and not inconsistent with the laws of the United States.

30 U.S.C. § 22 (2006) (alteration in original).

¶ 17 Section 26 of the Mining Act is also important for our purposes: "The locators of all mining locations ... shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations[.]" *Id.* § 26. The principle that a mining patent includes the surface rights finds support in caselaw. In *St. Louis Mining & Milling Co. of Montana v. Montana Mining Co., Ltd.*, 194 U.S. 235, 24 S.Ct. 654, 48 L.Ed. 953 (1904), the United States Supreme Court determined that, at least in that case, "the patent convey[ed] the sub-surface as well as the surface." *Id.* at 237, 24 S.Ct. 654. Likewise, in *Deffeback v. Hawke*, 115 U.S. 392, 6 S.Ct. 95, 29 L.Ed. 423 (1885), the Court stated: "The patent of a ... mining claim carries with it the title to the surface included within the lines of the mining location, as well as to the land beneath the surface." *Id.* at 406, 6 S.Ct. 95; *see also United Park City Mines Co. v. Estate of Clegg*, 737 P.2d 173, 176 (Utah 1987) (stating "mining claims presumptively include both the surface and mineral estates, unless a severance has occurred").

■ ¶ 18 Gillmor challenges this interpretation, relying on *United States v. Etcheverry*, 230 F.2d 193 (10th Cir.1956), and other similar cases, for the narrower principle that:

The right of the locator [of an unpatented mining claim] to use the surface for purposes other than for mining, or the right to dispose of timber, grass or other materials on or under the surface of the lands was not under consideration. We construe these cases to hold that the exclusive possession of the surface of the land to which the locator is entitled is limited to use for mining purposes.

*Id.* at 195. In *United States v. Good,* 257 F.Supp.2d 1306 (D.Colo.2003), the court cited several cases that stand for this proposition, but each of those cases shares the distinctive factor that the claim was unpatented. *See id.* at 1309 (citing *Teller v. United States,* 113 F. 273 (8th Cir.1901); *United States v. Bagwell,* 961 F.2d 1450 (9th Cir.1992); *United States v. Nogueira,* 403 F.2d 816 (9th Cir. 1968)). The patented/unpatented distinction is the key element. *Etcheverry* goes on to explain:

> The law is well settled by innumerable decisions that when a mining claim has been perfected under the law, it is in effect a grant from the United States of the exclusive right of possession to the same. It constitutes property to its fullest extent, and is real property subject to be sold, transferred, mortgaged, taxed, and inherited without infringing any right or title of the United States.

230 F.2d at 195 (citing *Ickes v. Virginia–Colorado Dev. Corp.,* 295 U.S. 639, 55 S.Ct. 888, 79 L.Ed. 1627 (1935); *Wilbur v. U.S. ex rel. Krushnic,* 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930); *Clipper Mining Co. v. Eli Mining & Land Co.,* 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944 (1904); *St. Louis Mining & Milling Co. v. Montana Mining Co.,* 171 U.S. 650, 19 S.Ct. 61, 43 L.Ed. 320 (1898); *Belk v. Meagher,* 104 U.S. 279, 26 L.Ed. 735 (1881)). Thus, where a mining patent has issued, the patent-holder is granted both the surface and mineral rights, unless there is a reservation excluding the surface estate.

¶ 19 In 1916, Congress passed the Stock–Raising Homestead Act (SRHA), which enabled the United States to sever ownership of the minerals from the surface in a given piece of property. *See* 43 U.S.C. § 299 *et seq.* (2006). The United States could thus transfer the surface lands to stock-raising homesteaders but reserve its interest in the below-ground mineral rights. "Congress' underlying purpose in severing the surface estate from the mineral estate was to facilitate the concurrent development of both surface and subsurface resources." *Watt,* 462 U.S. at 47, 103 S.Ct. 2218. "The SRHA applied to all lands the surface of which the Secretary of the Interior deemed to be 'chiefly valuable for grazing and raising forage crops' and reserved all the minerals in those lands to the United States." *Id.* at 49–50, 103 S.Ct. 2218 (quoting 43 U.S.C. § 292). Further, the SRHA "was designed to supply 'a method for the *joint use* of the surface of the land by the entryman of the surface thereof and the person who shall acquire from the United States the right to prospect, enter, extract and remove all minerals that may underlie such lands.'" *Id.* at 50, 103 S.Ct. 2218 (quoting H.R.Rep. No. 64–35, at 4, 18 (1916) (emphasis in original)). Thus, the SRHA enables the government to retain mining rights when conveying a homestead patent. The facts in this case, however, are the reverse because the 1929 Clegg/Blue Ledge Patent was issued under the Mining Act, which, as noted earlier, included surface rights. Consequently, the SRHA is not relevant to that Patent's validity or scope.

2. Validity of the 1930 Clark/Gillmor Patent

■ ¶ 20 Blue Ledge's legal theory is simple: its title is clear and, so, the United States Land Office erred in issuing the 1930 Clark/Gillmor Patent. The 1929 Clegg/Blue Ledge Patent states that it is issued pursuant to "Chapter Six, Title Thirty–Two" of the Mining Act and specifically excludes some rights but not the surface rights:

> FIRST, [t]hat the premises are subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local laws, customs, and decisions of the courts. And there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States[.]

> SECOND, [t]hat in the absence of necessary legislation by Congress, the Legislature of Utah may provide[ ] rules for working the mining claim or premises hereby granted, involving easements, drainage, and other necessary means to it[s] complete development,

Subject to such rights for transmission line purposes as the Utah Light & Power Co. may have[.]

Blue Ledge concludes this lack-of-exclusion supports its theory that the surface rights are included.

¶ 21 Gillmor, on the other hand, relying on the presumption of validity in any land patent, asserts that the United States Land Office must have intended that the 1929 Clegg/Blue Ledge Patent transferred only the mineral rights in the Property and the 1930 Clark/Gillmor Patent transferred the surface rights. Indeed, the 1930 Clark/Gillmor Patent expressly states that it transferred only the surface rights under the SRHA, "[e]xcepting and reserving . . . to the United States all the coal and other minerals in the lands so entered and patented, together with the right to prospect for, mine, and remove the same pursuant to the provisions and limitations of [the SRHA]."

■ ¶ 22 Given the Mining Act's mandate that surface rights are transferred with mineral rights in a land patent, we conclude that the 1929 Clegg/Blue Ledge Patent was a fee simple transfer of both the mining and surface rights in the Property, subject only to the exclusions listed in the Patent. This effectively voids the conflicting portion of the 1930 Clark/Gillmor Patent because the United States had nothing to convey when it issued that Patent. "A patent of the government cannot, any more than a deed of an individual, transfer what the grantor does not possess." *Noyes v. Mantle*, 127 U.S. 348, 354, 8 S.Ct. 1132, 32 L.Ed. 168 (1888); *see also Mantle v. Noyes*, 5 Mont. 274, 5 P. 856, 862 (1885) ("If the government issues a patent for lands that have been previously sold or reserved for sale, the patent is so far void.").

¶ 23 It is not Blue Ledge's responsibility to rebut Gillmor's presumption with facts when its legal theory does so. Indeed, given the lapse in time, it is impossible for either party to do more than conjecture about events in 1929 and 1930. Accordingly, the trial court did not err in concluding that there were no genuine issues of material fact, or that as a matter of law the 1929 Clegg/Blue Ledge Patent entitles Blue Ledge to quiet title and

voids the conflicting portion of the 1930 Clark/Gillmor Patent.

## II. Statute of Limitations

■ ¶ 24 Gillmor asserts that Blue Ledge is barred from bringing its quiet title claim by section 1166 of the United States Code, *see* 43 U.S.C. § 1166 (2006), which mandates that "[s]uits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents." *Id.* (originally Act of March 3, 1891, c. 561, § 8, 26 Stat. 1099). In order for this section to apply, as Gillmor concedes, Blue Ledge must stand in the shoes of the United States. It is also true, as Gillmor asserts, that it is irrelevant if the patent at issue is void, as we determined it is in Section I. *See United States v. Chandler–Dunbar Water Power Co.*, 209 U.S. 447, 450, 28 S.Ct. 579, 52 L.Ed. 881 (1908) ("If [43 U.S.C. § 1166] were confined to valid patents it would be almost or quite without use."). So, the United States is barred from bringing a suit to invalidate the 1930 Clark/Gillmor Patent. That, of course, is not what happened here. Gillmor asserts that Blue Ledge, standing in the shoes of the United States, is likewise barred.

¶ 25 Gillmor cites *Wollan v. United States Department of the Interior*, 997 F.Supp. 1397 (D.Colo.1998), for the proposition that a party standing in the shoes of the United States is similarly barred from bringing an action more than six years after the issuance of the patent. *See id.* at 1401. In that case, Wollan sought a determination that he had a valid claim of right to acreage based on a mining claim, and asserted his claimed interest had priority over claims of others who had acquired title pursuant to a patent issued nearly one hundred years later. *See id.* at 1398. However, Wollan failed to bring his claim within six years of the later patent. *See id.* at 1401. The court held he was barred by section 1166. *See id.* at 1402. The *Wollan* court wrote, "[b]ecause only the government may contest and seek the cancellation of an issued patent, [section] 1166 applies with equal force when a third party stands in the shoes of the federal government to compel the vacatur or annulment of

a patent." *Id.* at 1401; *see also Alaska v. First Nat'l Bank of Anchorage,* 689 P.2d 483, 484, 486 n. 13 (Alaska 1984) (noting that Alaska, standing in the shoes of the United States, was estopped to deny the validity of a federally issued patent six years after its issuance).

¶ 26 Under other circumstances, it may be that Blue Ledge stands in the shoes of the United States and is barred from bringing suit to void the 1930 Clark/Gillmor Patent. However, these are not normal circumstances for two reasons. First, failing to void an invalid patent cannot create title when the United States had no title to convey. In *United States v. Winona & St. Peter Railroad Co.,* 165 U.S. 463, 17 S.Ct. 368, 41 L.Ed. 789 (1897), the Supreme Court explained the purpose of section 1166, then referred to as the Act of 1891:

> Congress evidently recognized the fact that notwithstanding any error in certification or patent there might be rights which equitably deserved protection, and that it would not be fitting for the Government to insist upon the letter of the law in disregard of such equitable rights. In the first place, it has distinctly recognized the fact that when there are no adverse individual rights, and only the claims of the Government and of the present holder of the title to be considered, it is fitting that a time should come when no mere errors or irregularities on the part of the officers of the land department should be open for consideration. In other words, it has recognized that, as against itself in respect to these land transactions, it is right that there should be a statute of limitations; that when its proper officers, acting in the ordinary course of their duties, have conveyed away lands which belonged to the Government, such conveyances should, after the lapse of a prescribed time, be conclusive against the Government, and this notwithstanding any errors, irregularities or improper action of its officers therein.
>
> Thus, in the act of 1891, it provided that suits to vacate and annul patents theretofore issued should only be brought within five years, and that as to patents thereafter to be issued such suits should only be

brought within six years after the date of issue. Under the benign influence of this statute it would matter not what the mistake or error of the land department was, what the frauds and misrepresentations of the patentee were, the patent would become conclusive as a transfer of the title, *providing only that the land was public land of the United States and open to sale and conveyance through the land department.*

*Id.* at 475–76, 17 S.Ct. 368 (emphasis added). In this case, however, the Property *was not* "public land of the United States and open to sale and conveyance through the land department." Accordingly, we cannot conclude that the failure of Blue Ledge (or its predecessors) to challenge the 1930 Clark/Gillmor Patent before 1936 (the expiration of the prescribed period) thereby *created* title in Gillmor where no title would have existed had it been challenged within the appropriate time.

¶ 27 Second, even if we were to conclude that Blue Ledge was time-barred by section 1166, the ultimate question is unresolved: Who owns the Property? This is unlike *Wollan,* where Wollan was simply trying to undo a patent. Here, we are still left with a question of title ownership. Indeed, Blue Ledge's claim was not brought to void the 1930 Clark/Gillmor Patent; the claim originally was brought to quiet title.

¶ 28 In presenting their arguments to us, neither party raises the point that, in Utah, no statute of limitations bars a true quiet title action. "[I]f the claim is a true quiet title action, it is not subject to a statute of limitations." *Nolan v. Hoopiiaina,* 2006 UT 53, ¶ 26, 144 P.3d 1129. "A true quiet title action is a suit brought to quiet an *existing* title against an adverse or hostile claim of another, and the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants." *Id.* (internal quotation marks omitted).

¶ 29 Thus, despite section 1166, we cannot conclude that Gillmor owns surface rights in the Property by virtue of the homestead patent issued in 1930 and ultimately con-

veyed to her. By contrast, where the 1930 Clark/Gillmor Patent was void because the United States had nothing to transfer, Gillmor and her predecessors are still without those rights. Further, an action to quiet title is appropriate at any time. Accordingly, we conclude that Blue Ledge's claim is not time barred under section 1166.

### III. Dismissal of Gillmor's Adverse Possession Claims

¶ 30 In 2007, the trial court dismissed with prejudice Gillmor's adverse possession claim for failure to prosecute. The court cited facts including that

> thirteen years . . . have elapsed; the ample opportunity [Gillmor] has had to move this case forward, most especially since November 2005 when nothing was done at all until at least September 2007 when Gillmor asserts settlement negotiations began; her lack of action overall in the case concerning discovery; that most of [her] steps to prosecute her case have generally been in response to a court order or a motion requiring her to do so; that Blue Ledge has had its counterclaims granted and has nothing left to pursue and that the court has determined it will not [re]consider that grant of summary judgment; [and] that Blue Ledge has waited thirteen years to develop its land.

Gillmor appeals this order on the grounds that Blue Ledge, too, failed to prosecute its claim, and both parties should be treated equally.

¶ 31 "Dismissal for failure to prosecute is a decision within the broad discretion of the trial court," which we review for an abuse of that discretion, looking to see if "there is a likelihood an injustice has been wrought." *Country Meadows Convalescent Ctr. v. Utah Dep't of Health,* 851 P.2d 1212, 1214 (Utah Ct.App.1993). The basis for such a dismissal is found in rule 41(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 41(b). However, a court does not consider merely the amount of time lapsed when making its decision:

> [F]actors which we may consider include: (1) the conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each party has done to move the case forward; (4) the amount of difficulty or prejudice that may have been caused to the other side; and (5) most important, whether injustice may result from the dismissal.

*Country Meadows,* 851 P.2d at 1215 (internal quotation marks omitted). The trial court evaluated each of these factors and concluded that Gillmor had failed to prosecute the case.

¶ 32 Rather than offer reasons for her inaction, Gillmor cites cases wherein both parties had been dilatory and emphasizes the court's obligation to consider both sides. Gillmor refers us to *Crystal Lime & Cement Co. v. Robbins,* 8 Utah 2d 389, 335 P.2d 624 (1959): "Since any party . . . could have obtained the relief to which it was entitled at any time it had wanted but both parties chose to dally for a number of years, it was an abuse of discretion for the court to grant respondents' motion to dismiss with prejudice." *Id.* at 626.

¶ 33 Blue Ledge responds that it *did* prosecute its *own* claim to quiet title to a successful conclusion in November 2005 and that it was not responsible to prosecute Gillmor's adverse possession claim. Furthermore, Blue Ledge could not move for final judgment until all of Gillmor's claims were addressed. *See* Utah R. Civ. P. 54(b). Blue Ledge also emphasizes the trial court's acknowledgment of the prejudice Blue Ledge has suffered because of Gillmor's failure to diligently prosecute her claims—namely, preventing it from developing the Property for thirteen years.

¶ 34 We agree. The record indicates that Gillmor was particularly dilatory in moving her case forward and that Blue Ledge, while it had prosecuted its quiet title claim to completion, was prevented from moving for final judgment until the trial court resolved Gillmor's adverse possession claim. Given the considerable amount of discretion afforded to the trial court and the trial court's clear consideration of the applicable factors, we will not disturb its ruling on appeal.[2]

2. Gillmor also argues that Blue Ledge delayed    progress in the case by not timely seeking a final

## CONCLUSION

¶ 35 We affirm the trial court's conclusion that 1929 Clegg/Blue Ledge Patent transferred both mineral and surface rights, and accordingly, the United States Land Office had nothing to convey when it granted the 1930 Clark/Gillmor Patent. Thus, the 1930 Clark/Gillmor Patent is void. We further conclude Blue Ledge's claim is not barred by any statute of limitations because the United States government had no title to convey in 1930 and, in Utah, a true action to quiet title has no statute of limitations. Finally, we conclude that the trial court did not abuse its discretion in dismissing Gillmor's adverse possession claim because she was dilatory in moving her case forward.

¶ 36 Affirmed.

¶ 37 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and GREGORY K. ORME, Judge.

judgment quieting title, including a property description. We do not agree. Final judgment was not possible until Gillmor's adverse possession claim was resolved. *See* Utah R. Civ. P. 54(b). Blue Ledge sought final judgment at the appropriate point in this litigation.